JOHN E. SMEBERG v. ELLEN CUNNINGHAM.

*Adverse possession—Ejectment—Streets—Abutting owners.*

1. A holding cannot be adverse if the holder does not believe in his title; citing *Campau v. Lafferty,* 43 Mich. 431.

2. Possession, in order to ripen into a title to land, must be actual, continuous, visible, notorious, and hostile to that of the real owner.[1]

3. An entry with intent to remain in possession until the real owner claims the land, or demands rent, is not hostile.

4. Mere occupancy of land, in person or by tenants and boarders, or both, for the statutory period, without recognizing any one as landlord, and without paying rent to any one for the use of

[1] For cases bearing upon the question of what constitutes adverse possession, see *Cook v. Clinton,* 64 Mich. 310; *Murray v. Hudson,* 65 Id. 670; *Beecher v. Galvin,* 71 Id. 391, 395; *Greene v. Anglemire,* 77 Id. 168; *Shearer v. Middleton,* 88 Id. 621; *Deer Lake Co. v. Iron Co.,* 89 Id. 180; *Michigan Land & Iron Co. v. Thoney,* Id. 226; *Manufacturing Co. v. Swift,* Id. 503; *Sauers v. Giddings,* 90 Id. 50; *Clark v. Campau,* 92 Id. 573; *Paldi v. Paldi,* 95 Id. 410; *Pendill v. Agricultural Society,* Id. 491; *Judson v. Duffy,* 96 Id. 255.

the land, is not such an adverse possession as is necessary to establish title in the occupant.

5. An abutting lot-owner in a city owns the fee of the land to the center of the street, with the right to its use, subject to the public easement, and may set out shade trees, construct a sidewalk, and exercise other acts of ownership and possession which do not interfere with the public use.[1]

6. The owner of a lot abutting upon a public street in a city can recover in ejectment against one who ousts him of the use and possession of the land lying between his lot and the center of the street, under How. Stat. § 7790, which forbids a recovery unless the plaintiff has, at the time of commencing the action, a valid, subsisting interest in the premises claimed, and a right to recover the possession thereof, or of some share, interest, or portion thereof, to be proved and established on the trial.[2]

---

[1] See *People v. Foss*, 80 Mich. 559, holding that when the travel upon the wrought portion of a country highway has been in a uniform and beaten track, leaving grass to grow and ripen undisturbed upon either side, no one but the abutting land-owner has the right to harvest it; that he can maintain trespass or trover against any person cutting and taking it away against his will, and has the right to protect it against wanton and malicious damage or destruction, whether attempted under the guise of travel upon the highway or in some other way.

[2] For cases involving the questions of *what* interest a plaintiff must have in order to maintain an action of ejectment, and the *manner* in which it must be set forth in the declaration, see:

1. *Busch v. Nester*, 62 Mich. 382, holding that where timber has been wrongfully cut, but remains on the land, a recovery in ejectment of the land establishes title to the timber, so as to make its subsequent removal wrongful; and, as supplementing this decision, see *Wilson v. Hoffman*, 93 Mich. 72, holding that, after the title to the land has been so established, the plaintiff can maintain an action of trover for logs cut by the defendant from the standing timber and removed from the land during the pendency of the suit, and while in possession of the land under a *bona fide* claim of title adverse to the plaintiff.

2. *Shaw v. Hill*, 79 Mich. 86, holding that the possession of land is sufficient to authorize a recovery in an action of ejectment against a mere intruder, and, in the absence of proof of a paper title on either side, the presumption of title is in favor of the first possessor; but see same case, 83 Mich. 322, holding that, while the right of possession of a plaintiff under color or claim of title may be *prima facie* title as against a mere intruder, yet when the defendant shows an equitable interest in the land, unconnected with and independent of plaintiff's claim of title, he may show in defense plaintiff's want of title.

3. *Harrington v. Port Huron*, 86 Mich. 46, holding that ejectment will not lie for anything that is not tangible or capable of being delivered to the plaintiff by the sheriff under a writ of possession, nor for a mere trespass, right of way, or easement.

4. *Michigan Land & Iron Co. v. Thoney*, 89 Mich. 226, holding

Error to Marquette.   (Stone, J.)   Argued June 16, 1893.
Decided July 25, 1893.

Ejectment.   Plaintiff brings error.   Reversed.   The facts
are stated in the opinion.

*Ball & Hanscom,* for appellant, contended:

1. The occupancy by defendant was not adverse or hostile to the
   real owner; citing *Sparrow v. Hovey,* 44 Mich. 63; *Yelverton
   v. Steele,* 40 Id. 538; *Shearer v. Middleton,* 88 Id. 621.

2. Adverse possession, in order to be effectual, "must be retained
   under a claim of right to hold the land against him who was
   seised, and the person against whom it is held must have
   knowledge, or the means of knowledge, of such occupation
   and claim of right;" citing *Thompson v. Pioche,* 44 Cal. 517;
   *Thompson v. Felton,* 54 Id. 553; and the presumptions are in
   favor of the party establishing the legal title; citing How. Stat.
   § 8701; and the act of supposed disseisin, if equivocal in its
   nature, is presumed to be in accordance with, and not in hos-
   tility to, the title of the true owner; citing 3 Washb. Real
   Prop. 499; *Fosgate v. Hydraulic Co.,* 9 Barb. 294.

---

that a vendor in a land contract giving the vendee the right to
the possession of the land cannot maintain ejectment to recover
such possession until he terminates the contract relation by notice
of forfeiture and demand of possession, or until the happening of
some other fact or circumstance giving the right to such possession.

5. *Drake v. Happ,* 92 Mich. 580, holding that ejectment is the
proper action in which to try boundary lines.

6. *Goodall v. Henkel,* 60 Mich. 382, holding that a failure to aver
the nature and extent of the plaintiff's claim to the land renders
the declaration fatally defective, and that, while the objection
should be raised by demurrer, the error is such as to demand an
affirmance of a judgment rendered in favor of the defendant on
other grounds; and see *Ludeman v. Hirth,* 96 Mich. 17, holding
that it is error to refuse to allow the plaintiff to amend his declara-
tion, after issue is joined on the merits, by setting forth the estate
he claims in the land.

7. *Reilly v. Blaser,* 61 Mich. 399, holding that a judgment for
the entire premises cannot be sustained where the plaintiff estab-
lishes his title to but an undivided interest in the land.

8. *Bringhurst v. Railroad Co.,* 78 Mich. 570, holding that the
verdict must follow the declaration as to the description of the
premises, and the extent and quality of the estate claimed; and
that where title is established to but an undivided interest in the
land described in the declaration, and the defendant is in peacea-
ble possession, and not an intruder, judgment should be rendered
accordingly, and the declaration amended to correspond with the
right established at the trial.

*Charles R. Brown & Son,* for defendant, contended:

1. Our statute forbids ejectment when the plaintiff has not, when he commences his suit, a valid, subsisting interest in the premises, and a right to recover the possession thereof; citing How. Stat. § 7790; *Donihue v. Rankin,* 31 Mich. 148; *Grand Rapids v. Whittlesey,* 33 Id. 109; *Bay Co. v. Bradley,* 39 Id. 166.
2. It must be conceded that the plaintiff is not the absolute owner of the land in question. By the statute, the legal title is vested in the city, and it is only upon the abandonment of the street, if it has been used, that the plaintiff or his heirs could acquire an absolute title in fee. At most, he has a mere reversionary interest in the land to the center of the street, and a party having a mere reversionary interest cannot maintain ejectment.
3. The statute of limitations has regard to the laches of the owner, and denies him a remedy for the recovery of his rights because he has failed to pursue them within a limited time; citing *Showers v. Robinson,* 43 Mich. 502. That there should be a continued possession for the statutory period to bar the right of entry is admitted, but it need be such only that, if wrongful, an action of trespass might be maintained at any and all times; and a right of entry must be enforced within the period of limitation; citing *Cook v. Hopkins,* 68 Mich. 517; and any intrusion may continue long enough to bar such right; citing *Campau v. Dubois,* 39 Mich. 280.
4. The acts of Peter White in platting two large tracts of land, in which is situated the 50 feet in dispute, did not operate as a disseisin, and no entry or act of the true owner which does not have that effect is of any avail to break the continuity of possession; citing *Donovan v. Bissell,* 53 Mich. 462; and How. Stat. § 8705, is applicable to such a case; citing *Riopelle v. Gilman,* 23 Mich. 33.

GRANT, J. Plaintiff is the owner of the record title to the land in controversy. Defendant claims title by adverse possession. The land is described in the declaration as—

" That portion of Palms street lying north of the center line of said street, and south of the north line of said street, and abutting on lots 15 and 16 of block 1 of White's addition to the city of Marquette."

From 1871 to 1880 the Champion Iron Company was owner of the governmental subdivision which included this

land. The land was mainly unoccupied, but at some time a small house had been built upon it, but when or by whom does not appear. The owners of the land do not appear to have paid much attention to it for many years, though Mr. Peter White, of Marquette, had general charge of it. A fence had been built inclosing some of the land around the house. The land was platted in 1888. The house is in Palms street, and the land which defendant claims is directly in front of plaintiff's lots, on which he erected a house. One of his lots fronts on Palms street, and the other is on the corner of Palms and Champion streets. While he was building his house and improving his lots, he used the street covering the land in controversy, and built with reference to it. During this time defendant saw what he was doing, but made no objection or claim of ownership to him until after he had lived upon his lots six months, when she built a fence along the front of his lots. Poor people appear to have moved into this house at various times, and to have occupied it without paying rent, or claiming any right either to the house or to the land. One Hudson, a witness for the defendant, testified that he occupied the premises with his mother in 1873 and part of 1874; that his mother was poor, the house was empty, and he knew of no authority given them to occupy it; and that when his mother moved out the defendant moved in. Defendant occupied it until some time in 1888 or 1889, when she removed to another part of the city, but her daughter testifies that she left some goods in the house, and that she had boarders who slept there.

The character of the possession will appear from defendant's own testimony:

"*Q.* State how you came to go and live there.

"*A.* Well, a man by the name of Mr. Neff lived in the house, and my man worked there. We lived by the furnace, and he came into the house, and said that it was a good place for a poor family, and that it would be near his

work, and he said that he lived in there quite a good many years, and he said that he never paid any rent, nor no rent was ever asked of him, he says; and he said he had poor health, and couldn't do any work. He worked on the docks. 'That I ain't able to do,' he says; 'I am going out west to get a bit of land.' Well, then I saw my husband, and asked him whether I would go. I says, 'I would like to look at it;' and he said it was pretty good, and 'you will never have to pay any rent.' So I went and moved in there, to see how we would get along there, and I told Mrs. Swineford I would live there, and make it my home, and the rest of my family, and keep it; when nobody was looking for rent, I would keep it."

On cross-examination she testified that, some five or six years after she went into the house, she had a conversation with a Mr. Ely, in which he told her that it was his brother and Mr. Wells who owned the house; and that "the reason she kept it was because they were dead."

Defendant's daughter was asked what claim she heard her mother make, and she replied:

"Quite a few times, when I was going to visit her, she always said she was going to live there, because my father, he wanted her to go out west, and she wouldn't go; it was a wild place, and she had a place of her own.

"Q. Did she give any reason for her claim?

"A. She thought nobody had ever bothered her, and never had come to look for rent and bother with her place, and she thought she might as well stay there."

On cross-examination this witness said that if her mother had had to pay rent she would not have lived there.

Meanwhile, the owners of the land paid the taxes, and the property was sold and mortgaged, and the owners of the record title exercised the usual acts of ownership over land situated as this was.

Defendant was poor, and during a large portion of the time of her occupancy of this house was the recipient of aid from the poor fund of the county. Mr. Maynard, for many years one of the superintendents of the poor, testified that in 1885 she asked him to pay the rent of the house,

saying she was not able to do it. Peter White testified that in 1880, after the land was sold by the Champion Iron Company, he had the entire charge of the property, paid the taxes, exercised other acts of ownership over it, and in that year asked the defendant to pay rent, and she replied that she was too poor to pay it. These statements were denied by her, and, so far as they are concerned, it was, of course, a question for the jury.

The following special questions were submitted to the jury at the request of defendant's counsel, and respectively answered by the jury, as follows:

" *Q.* Did the defendant occupy the premises in dispute, either by herself or her tenants and boarders, or both, for a period of 15 years, continuously, prior to the commencement of this suit, without recognizing any one as her landlord?

" *A.* Yes.

" *Q.* Did the defendant ever pay rent to any one for the premises in dispute?

" *A.* No."

1. The court, as requested, should have instructed the jury that the defendant had failed to establish title by adverse possession. She did not enter under any claim or color of right, nor in the belief that she had any right. Her entry and possession were the same as those of former occupants, who claimed no right to the property. She did not intend to retain possession, according to her own evidence, any longer than she could do so without the payment of rent. This was a recognition of title in some one else, and was conclusive evidence that her entry and possession were subject to that title. The answers to the special questions do not, of themselves, establish a case of adverse possession necessary to establish title. Mere possession is not sufficient. It must not only be actual, continuous, visible, and notorious, but it must be hostile to the title

of the real owner. An entry with the intent to remain in possession until the real owner claims it, or demands rent, is not hostile. These questions clearly gave the jury to understand that such possession was sufficient to establish title in defendant. Their verdict can be explained upon no other theory. Her actual residence upon the property was not 15 years. Including the time during which, according to her daughter's testimony, she had some goods in the house, her possession was barely 15 years. The statute of limitations, in such cases, begins to run only from some act of possession so open, notorious, and hostile that it constitutes, in law, a notice to the real owner. The entry, under the circumstances of this case, was not such an act. No subsequent act or assertion upon her part, even if sufficient, is shown to have occurred 15 years prior to the commencement of the suit.

It was said by Mr. Justice CAMPBELL in *Campau v. Lafferty*, 43 Mich. 431, "that a holding cannot be adverse if the holder does not believe in his title." It was also said in that case that "a possession may be maintained long enough by an undisturbed and defiant trespasser to bar an ejectment." The defendant in this case did not believe in her title, nor was she a defiant trespasser.

2. It is contended that the plaintiff has no such title in this land as would sustain an action of ejectment. The plaintiff is the owner of the fee of the land to the center of the street, and has the right to its use, subject to the public easement. He may set out shade trees, construct a sidewalk, and exercise other acts of ownership and possession which do not interfere with the public use. He has a valid and subsisting interest, under How. Stat. § 7790. The rights of the public are not here in issue, and the question whether the municipality could maintain an action of ejectment is not involved. Plaintiff was ousted of his

96 MICH.—25.

possession and use by the act of the defendant. Under such circumstances, ejectment is the proper remedy.

Judgment reversed, and new trial ordered.

The other Justices concurred.