# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD MORSE,

　　　　Plaintiff/Counter-Defendant-
　　　　Appellee/Cross-Appellant,

v

MARC COLITTI and JOAN COLITTI,

　　　　Defendants/Counter-Plaintiffs-
　　　　Appellants/Cross-Appellees,

and

JAMES McMANUS and BARRY COUNTY
PLANNING & ZONING DEPARTMENT,

　　　　Defendants.

FOR PUBLICATION
October 18, 2016
9:10 a.m.


No.　328212
Barry Circuit Court
LC No.　13-000588-CH

Before:　K. F. KELLY, P.J., and O'CONNELL and BOONSTRA, JJ.

BOONSTRA, J.

　　　　Defendants/cross-appellees Marc and Joan Colitti,[1] appeal by right the trial court's
June 18, 2015 judgment following a bench trial in this property dispute. The trial court held, in
part, that defendants' dock overburdened the property at issue, and ordered its removal.
Defendants contest plaintiff's standing, and also challenge certain other aspects of the trial
court's rulings. Plaintiff/cross-appellant Richard Morse (plaintiff), cross-appeals as to the trial
court's denial of his request for removal of a fence erected by defendants on the property, its
failure to preclude the use of the property by defendants' back-lot tenants, and its earlier grant of
partial summary disposition in favor of defendants with respect to defendants' construction on

---

[1] Defendants James McManus and Barry County Planning & Zoning Department (of which
McManus is the director) are not parties to this appeal. Plaintiffs' claims against those
defendants were dismissed by stipulation. We therefore will refer to Marc and Joan Colitti as
"defendants."

-1-

the property of a stairway and a pathway forged with landscaping blocks. We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff and defendants own lots in the West Beach neighborhood bordering Fine Lake in Barry County. The 1928 West Beach plat dedicated the "streets, alleys and parks" to "the use of the present and future lot owners." The plat designates a park (the Park) as running along the lakeshore, separating Fine Lake from platted lots 1 through 26 (the front lots). Additionally, a 10-foot-wide "walk" (the Walk) exists between lot 5, which is owned by defendants, and lot 6, which is owned by plaintiff.[2] In 2009, defendants used landscaping blocks to create a pathway, including a retaining wall, on the Walk. They also built a stairway from the pathway to the lake. They subsequently erected a wooden fence on the Walk, within inches of the lot line separating the Walk and plaintiff's lot 6. Defendants also own the back-lot property at 3406 West Shore Drive, which lies to the west of the West Beach plat but includes a strip of the southern 16 feet of lot 44 in the West Beach plat. After defendants rented out the property at 3406 West Shore Drive, they built a dock on Fine Lake that was in line with the Walk.

Plaintiff filed suit in 2013, in part alleging and seeking monetary damages for trespass, nuisance, and the violation of the Barry County Zoning Ordinance (BCZO), and additionally requesting that the trial court (1) determine that he owned the fee to the center of the Walk, subject to an easement for ingress and egress; (2) determine that defendants had trespassed on his property, and order defendants to remove all dirt, landscaping blocks, and fences from his portion of the Walk (and that, if defendants failed to do so and plaintiff removed the items, plaintiff would receive a judgment against defendants with damages trebled); (3) determine that defendants' erection of a dock at the end of the Walk violated the BCZO; (4) enjoin defendants from allowing their tenants at 3406 West Shore Drive to use the Walk to gain access to Fine Lake; and (5) grant plaintiff attorney fees and costs. Plaintiff later added a claim that, as an owner of land abutting the Walk, he had a reversionary interest in the fee of the Walk to its center, which would become a possessory interest if and when the Walk was vacated.[3]

By order dated November 4, 2014, the trial court denied the parties' cross-motions for summary disposition. The court further determined "that the [Walk] is not, at this time, subject to the reversionary interest that Plaintiff claims," and "that all lot owners are entitled to use [the Walk] as a [sic] easement." By order dated June 2, 2015, the trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(7) (claimed barred by limitations period) on plaintiff's nuisance, trespass, and violation of the BCZO claims regarding the

---

[2] Similar walks are platted elsewhere within West Beach, between other front lots, providing backlot access to the Park and Fine Lake.

[3] Defendants filed a counterclaim against plaintiff regarding a retaining wall and a riparian platform built by plaintiff that extended into the Walk. During trial, when the evidence demonstrated that the wall and platform were built before 1999, the parties stipulated to the dismissal of the counterclaim. It is not at issue on appeal.

pathway and stairway. The trial court also held that lot owners had an easement interest in the Park and described the Park as merely "an extension of the walkway . . . subject to the right of the public's right [sic] to traverse the area."[4] The trial court reserved other issues regarding the fence and the dock for trial. Following a bench trial, the trial court issued the judgment described in part above. This appeal and cross-appeal followed.

## II. DEFENDANTS' APPEAL

### A. PUBLIC DEDICATION

On appeal, defendants argue that the trial court erred when it described the dedication of the Park as a public dedication. Plaintiff stipulates that this description was in error. We agree. At the hearing in which the trial court granted partial summary disposition in favor of defendants, the trial court stated that the Park "was subject to . . . the public's right to traverse the area." The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal. *Wiggins v Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). We review de novo a trial court's grant or denial of summary disposition. *Wiggins*, 291 Mich App at 550.

When a person purchases property that is recorded in a plat, the purchaser receives both the interest described in the deed and the rights indicated in the plat. *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 219; 731 NW2d 472 (2007). When interpreting a plat, this Court seeks to effectuate the intent of the plattor. *Tomecek v Bavas*, 482 Mich 484, 490-491; 759 NW2d 178 (2008) (opinion by KELLY, J.); *id.* at 499 (CAVANAGH, J., concurring in part and dissenting in part). When the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003).

The plat "dedicated" the Park to "the use of the present and future lot owners." Because language dedicating land for "the use" of others is consistent with a grant of an easement, not a grant of fee ownership, *Dobie v Morrison*, 227 Mich App 536, 540; 575 NW2d 817 (1998), the plat granted an easement in the Park. Moreover, because "the use" of the Park was dedicated to the "present and future lot owners," the holders of the easement were the present and future lot owners, not the public at large. The trial court erred in more broadly stating that the public had a right to traverse the Park.[5]

---

[4] The legal nature of the Park, and the possession of easement rights in the Park by lot owners, is relevant to whether plaintiff has standing to challenge defendants' erection of the dock. See Part II(C) of this opinion.

[5] We agree with plaintiff that this statement by the trial court was likely a simple misstatement.

B.  SEPARATE PROPERTY FEATURES

Defendants also argue that the trial court erred by describing the Park as "merely an extension of the easement" in the Walk.  According to defendants, the trial court treated the Park and the Walk as one property feature.  Although defendants concede that this error is "seemingly minor," they still seek its correction as they claim the trial court's statement "casts grave uncertainty on whether riparian rights run to the Park or to the Walks or both."  Indulging defendants, we disagree that the trial court ever treated the Park and Walk as a single property feature.

At the summary disposition hearing, the trial court stated that, because of the word "use" in the dedication, the lot owners only received an easement in the Park.  It then defined the scope of the easement, concluding that the Park "is merely an extension of the easement" in the Walk.  When this challenged statement is read in context, the trial court was not stating that the Park and the Walk constituted a single property feature.  Rather, the statement reflected the trial court's conclusion that, because of the Park's character, the scope of the easement in the Park did not include traditional park purposes, but was limited to the right to traverse the Park.  Thus, the trial court's statement served to describe the scope of the easement in the Park as the same as the scope of the easement in the Walk.  Accordingly, defendants' argument that the trial court treated the Walk and the Park as a single property feature is without merit.

C.  STANDING

Next, defendants argue that plaintiff lacked standing to challenge any alleged misuse of riparian rights in the park (i.e., defendants' erection of the dock), because he did not have any riparian rights in the Park.  The issue whether a party has standing to assert a claim is a legal question reviewed de novo.  *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015).

Land that includes or is bounded by water is defined as riparian.  *Thies v Howland*, 424 Mich 282, 287-288; 380 NW2d 463 (1985).[6]  Owners of riparian land enjoy certain exclusive rights, including the rights to erect and maintain docks and to permanently anchor boats off the shore.  *2000 Baum Family Trust v Babel*, 488 Mich 136, 166; 793 NW2d 633 (2010).  Generally, it is an "indispensable requisite" that land actually touch water to be riparian, but there are exceptions to this rule.  *Id*. at 167.

Taking different views of the Supreme Court's decision in *Thies*, 424 Mich 282, and this Court's decision in *Dobie*, 227 Mich App 536, the parties disagree about whether the existence of the Park between the front lots and Fine Lake means that the front lots are not riparian.  However, we need not determine whether the front lots are riparian and, if not, who owns the fee in the Park in order to resolve defendants' argument that plaintiff lacks standing to challenge the

---

[6] More accurately, land that includes or borders a river is defined as riparian, while land that includes or borders a lake is defined as littoral.  *Thies*, 424 Mich at 288 n 2.  However, the term "riparian" is often used to describe both types of land.  *Id*.

use of alleged riparian rights in the Park. Even assuming for the sake of argument that plaintiff does not have riparian rights in the Park, there is no dispute that plaintiff is a lot owner who therefore has an easement in the Park. And an easement is a property interest. *Dep't of Natural Resources v Carmody-Lahti Real Estate*, 472 Mich 359, 378; 699 NW2d 272 (2005).

In *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), the Supreme Court set forth the general rule regarding standing:

> We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's long-standing historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.

Because plaintiff at a minimum has an easement in the Park, he has a substantial interest in determining what rights defendants and others had in building a dock and mooring a boat at the shore of the Park. In other words, because only lot holders had an easement in the Park, plaintiff had a special injury or right, or substantial interest, that would be detrimentally affected in a manner different than the citizenry at large. *Id*. Accordingly, plaintiff had standing to challenge defendants' erection of the dock.[7]

## III. PLAINTIFF'S CROSS-APPEAL

## A. USE OF THE WALK BY DEFENDANTS' TENANTS

Plaintiff argues that the trial court erred by failing to address whether defendants' tenants were allowed to use the Walk to access Fine Lake. The parties dispute whether plaintiff adequately pleaded this issue; the trial court held that he did not do so. However, even if

---

[7] While not necessary to our determination that plaintiff has standing to challenge defendants' erection of a dock, it does not escape our notice that plaintiff and defendants are similarly situated—both own front lots abutting the Park that separates their respective properties from Fine Lake—yet defendants simultaneously contend that they had a right to build a dock, but that "[b]ecause [plaintiff] lacks any fee interest, he also lacks any riparian rights—i.e., to erect and maintain docks along the owner's shore and to permanently anchor boats off the shore . . . to the Park property." While the record suggests that defendants may contend that they may own the entire fee in the Walk and Park, as supposed successors to the original plattors, they were not determined to be such, and the irony and inconsistency of defendants' position—that they and only they have a right to erect a dock— is otherwise not lost on us.

plaintiff adequately pleaded this issue, plaintiff is not entitled to an order precluding the tenants from using the Walk to access Fine Lake.

If a dominant estate with easement rights is divided, all resulting parcels take a share in the easement, so long as an unreasonable burden is not imposed upon the servient estate. See *von Meding v Strahl*, 319 Mich 598, 611; 30 NW2d 363; *Walker v Bennett*, 111 Mich App 40, 44; 315 NW2d 142 (1981). "Generally, a mere increase in the number of persons using an unlimited right of way to which the land is subject is not an unlawful additional burden." *Henkle v Goldenson*, 263 Mich 140, 143; 248 NW 574 (1933).

Lot 44 in the West Beach plat (the owner of which possessed easement rights in the Walk) was divided, and a strip of the southern 16 feet of the lot became part of the property identified as 3406 West Shore Drive. When lot 44 was split, the two resulting parcels each took an easement in the Walk, so long as there was no unreasonable burden imposed on the servient estate. See *von Meding*, 319 Mich at 611; *Walker*, 111 Mich App at 44. Because a mere increase in the number of persons using a right of way is not an unlawful additional burden, *Henkle*, 263 Mich at 143, the mere use of the Walk by the tenants (absent some further showing) did not impose an unreasonable burden on the servient estate. Accordingly, defendants' tenants have a right to use the Walk to access Fine Lake, and the trial court did not err by failing to preclude them from doing so.

## B. THE FENCE AND RELATED STRUCTURES

Plaintiff raises several issues relating to the fence that defendants erected on the Walk, specifically that it interferes with his access to the Walk, that it overburdens the easement on the Walk, and that it violates the BCZO. In moving for summary disposition, plaintiff argued below that, because he owns land abutting the Walk, he has a fee interest in the Walk (subject to the easement interests of lot owners generally) and was entitled to "free" access from his property to the Walk. The trial court held that all lot owners had an easement in the walk, and initially indicated at the summary disposition hearing that it did not need to address whether plaintiff had a reversionary fee interest because there was no indication that the Walk would ever be abandoned. Yet, as noted, the trial court subsequently determined, in its November 4, 2014 order, "that the walkway is not, at this time, subject to the reversionary interest that Plaintiff claims." At the conclusion of the bench trial, the trial court held that the fence did not overburden the easement. The scope and extent of an easement is a question of fact that this Court reviews for clear error. *Wiggins*, 291 Mich App at 550. The question whether the scope of an easement has been exceeded is also a question of fact reviewed for clear error. *Id*. This Court reviews de novo a trial court's grant or denial of summary disposition. *Id*. We also review de novo questions involving the interpretation of an ordinance. *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 664; 697 NW2d 180 (2005).

## 1. PLAINTIFF'S INTEREST IN THE WALK

Plaintiff argues that, as an owner of property abutting the Walk, he owns a fee interest in one-half of the Walk, and is therefore entitled to access it from "any" and "all" points along the boundary line between his property and the Walk, that defendants' fence prevents him from doing this, and that the trial court therefore erred in refusing to order its removal. Indeed, the

record reflects that defendants' erection of the fence within the Walk (and just outside plaintiffs' property line) effectively forecloses plaintiff's access to the Walk except by entering from the street that fronts both plaintiff's and defendants' lots. For the reasons that follow, we agree that plaintiff possesses a fee interest to the midpoint of the Walk, that the trial court erred by failing to grant summary disposition in favor of plaintiff on that issue, and that a remand is therefore required.[8]

In support of his argument, plaintiff relies on *2000 Baum Family Trust* and *Thies*. In *Baum Family Trust*, 488 Mich at 152, our Supreme Court explained the "threefold relation" that an owner of property abutting a public street has to the street. First, an abutting landowner, as a member of the public, has a right to use the street for travel. *Id*. Second, an abutting landowner possesses a reversionary interest to the center of the street. *Id*. at 152, 155. Regardless of how the street was dedicated to the public, title to a street that is vacated or abandoned vests in the owners of the lots abutting the street. *Id*. at 155-156. Third, an abutting landowner possesses a right of ingress and egress to the street. *Id*. at 152, 157.

In *Thies*, 424 Mich at 291-294, the Supreme Court held that the owners of the lots abutting a 12-foot "walk," which separated a front row of lots from a lake and was dedicated for the joint use of the owners of the plat (i.e., present and future lot owners), each possessed an a fee interest in the walk for the portions that abutted their property. *Id*. at 291-294.[9]

Here, the 1928 plat dedicates "the streets, alleys, and parks" to "the use of the present and future lot owners." While the Walk is not specifically described as either a "street" or an "alley," our review of the plat map indicates that there is nothing that could be termed an "alley" other than the walks that periodically separate front lots that abut the Park (thereby providing backlot access to the Park and Fine Lake). The Walk, unlike the "walk" in *Thies*, does not run along the lake. Rather, it is situated entirely between lots 5 and 6 in the West Beach plat, paralleling those lots and running perpendicular toward the lake, and abutting the Park at the front line of the lots. But this distinction is of no matter. In *Thies*, the Supreme Court began with the general rule that, unless a contrary intent appears, the owners of land abutting a street are presumed to own the fee in the street to the center, subject to the public easement. *Id*. at 291. Based on this general rule, and given that the Supreme Court in *Thies* applied a variant of it, i.e., that owners of land abutting a "privately platted walkway" that is contiguous to the water are presumed to own the fee in the entire way, subject to an easement, *2000 Baum Family Trust*, 488 Mich at 181, we

---

[8] Although much of the parties' arguments center around the fence, the trial court's error in failing to recognize plaintiff's fee interest impacts plaintiff's claims not only in relation to the fence, but also in relation to other structures erected by defendants on plaintiff's portion of the Walk.

[9] Unlike in the instant case, the walk in *Thies* was bounded by lots on only one side, as the walk ran along the waterfront. The Court therefore concluded that the lot owners owned the fee in the entire width of the walk (rather than to its center), for that portion of the walk that abutted their property, subject to the easement interest of the remaining lot owners. See *Thies*, 424 Mich at 468.

conclude that plaintiff owns the fee in the Walk to its center, subject to an easement given to the lot owners generally.[10] We therefore reject defendants' argument that plaintiff (and, presumably, defendants themselves) own *only* an easement interest in the Walk. While we have said in other contexts that "a private dedication in a plat made before January 1, 1968 conveys an irrevocable easement, whereas a private dedication in a plat after January 1, 1968, conveys a fee interest,"[11] *Redmond v Van Buren Co*, 293 Mich App 344, 354; 819 NW2d 912 (2011), the genesis of that statement is our Supreme Court's determination that pre-1968 private dedications convey "*at least* an irrevocable easement in the dedicated land." *Little v Hirschman*, 469 Mich 553, 564; 677 NW2d 319 (2004) (emphasis added).

We conclude that the context of the instant case provides real meaning to the words "at least," and that based upon the general principles articulated in *Thies* and *2000 Baum Family Trust*, the plat in this case conveys not only an easement to lot owners generally, but an additional fee interest to the lot owners whose property lies adjacent to the platted walks. We therefore hold that plaintiff and defendants each own a fee interest in one-half of the Walk, subject to the easement rights of lot owners generally, and that the trial court erred by failing to grant summary disposition in favor of plaintiff on that issue.

It is undisputed that the owner of a fee interest has the right to keep his or her property free from trespass and significant encroachment. See *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 315; 788 NW2d 679 (2010); *Kratze v Independent Order of Oddfellows*, 442 Mich 136, 149; 500 NW2d 115 (1993); *Smeberg v Cunningham*, 96 Mich 378, 385; 56 NW 73 (1893). From the trial exhibits and testimony, it appears that at least some portion of the fence (if not the entire fence) is built near plaintiff's property line (and therefore within the portion of the Walk in which plaintiff owns a fee interest); however, we are unable to definitively determine from the record to what extent the fence and related structures encroach onto plaintiff's portion of the Walk. Having determined that plaintiff owns a fee interest in one-half of the Walk, we therefore remand for a determination of the extent to which the fence and related structures encroach on plaintiff's interest, and for a determination of the appropriate remedies therefor.[12]

---

[10] The fee interest of an abutting landowner in a roadway means that the landowner has the right to use of the land under which the road runs, subject to the prohibition that they must not interfere with the use by easement holders. *Smeberg v Cunningham*, 96 Mich 378, 385; 56 NW 73 (1893) ("He may set out shade trees, construct a sidewalk, and exercise other acts of ownership and possession which do not interfere with the public use."). The landowner also possesses the right to eject trespassers. See *id*. (noting that ejectment was the proper remedy when a fence had been built upon a portion of the street abutting the plaintiff's lots).

[11] The 1968 date refers to the effective date of the land division act, i.e., the plat act of 1967, MCL 560.101 et seq. MCL 560.253(1) provides in relevant part that a dedication is deemed to convey the dedicated property in fee simple to the recipients of the dedication.

[12] Although, as discussed later in this opinion, we conclude that plaintiff has alleged in Count I a viable claim insofar as it seeks equitable relief, on remand plaintiff may move to amend his

-8-

## 2. BURDEN ON THE EASEMENT

Plaintiff next argues that the trial court erred by finding after trial that defendants' fence did not overburden the Walk. We conclude that the trial court clearly erred by focusing solely on the fence, by offering no rationale (for finding that the fence did not overburden the Walk) other than that, given the apparently poor relations between plaintiff and defendants, it was "probably beneficial for the parties to keep that fence up," and by failing to address whether the fence and related structures on plaintiff's portion of the Walk were necessary for the effective use of the easement. *Wiggins*, 291 Mich App at 550. For the reasons that follow, we further have serious reservations about whether the fence (and related structures) were necessary for the effective use of the easement and whether they did in fact overburden the easement.[13]

Our analysis of this issue is impacted by our determination that plaintiff and defendants each own a fee interest to the centerline of the Walk, subject to the easement for lot owners, and also are themselves lot owners. Thus, plaintiff and defendants each own a portion of the Walk while simultaneously possessing an easement right in the Walk. A party who enjoys an easement is entitled to maintain it so that it is capable of the use for which it was given. *Carlton v Warner*, 46 Mich App 60, 61; 207 NW2d 465 (1973). However, a "fundamental principle" of property law is that the holder of an easement "cannot make improvements to the servient estate if such improvements are unnecessary for the effective use of the easement or they unreasonably burden" the servient estate. *Blackhawk Dev Corp v Dexter*, 473 Mich 33, 41; 700 NW2d 364 (2005); see also *Unverzagt v Miller*, 306 Mich 260, 265; 10 NW2d 849 (1943). A two-step inquiry has evolved for repairs or improvements to an easement. *Blackhawk Dev Corp*, 473 Mich at 42; *Mumrow v Riddle*, 67 Mich App 693, 700; 242 NW2d 489 (2005). The first inquiry is whether the repair or improvement is necessary for the effective use of the easement. *Blackhawk Dev Corp*, 473 Mich at 42; *Mumrow*, 67 Mich App at 700. The second inquiry is whether the repair or improvement unreasonably burdens the servient estate. *Blackhawk Dev Corp*, 473 Mich at 42; *Mumrow*, 67 Mich App at 700.

Joan Colitti testified that plaintiff had at least one aggressive dog and that plaintiff's invisible dog fence went across the Walk and ended underneath defendants' hedges (meaning the dogs were able to access the Walk). Further, Marc Colitti testified that plaintiff once "sic'd" his dogs on neighbors who were using the Walk. Joan testified that at some time before the fence was erected, plaintiff "charged out" at defendants while they were weed-whacking on the Walk. She also testified that plaintiff threatened her and called her names. Additionally, Joan testified that plaintiff, when he mowed his lawn, directed the discharge from the mower toward the Walk and sometimes the discharge landed on the pathway. Marc testified that he once found plaintiff removing stones that he had placed in the Walk. It thus does appear that a fence might possess some utility in providing a barrier between feuding neighbors. But it is questionable at best

---

complaint to more clearly allege a claim of quiet title or ejectment. *Smeberg*, 96 Mich 378 at 385.

[13] We note that, in allowing the fence to remain (so as to minimize contact between plaintiff and defendants), the trial court stated, "However, if anyone else comes in and requests it down, then I guess that would have to be reconsidered."

whether the fence, as erected, is necessary to the effective use of the walk as an easement. The fence does not aid lot owners in traversing it, apart perhaps from protecting them from walking on lawn debris and from the alleged bad behavior of the neighbors. We are not convinced that a permanent structure would need to be built to ensure that the easement remains useful to all lot owners, especially because plaintiff cannot be barred from either the use of the easement or the use of land in which he owns a fee. If defendants wished to avoid contact with plaintiff, nothing prevented them from building a fence on their own property line, or at least on their side of the Walk, again subject to the easement rights of lot owners.

Additionally, from the record before us, the placement of the fence combined with other structures erected on the easement by defendants have the effect of making it appear that the Walk is part of defendants' lot. That is, the nature of the fence, and its placement apparently on the far side of the Walk along plaintiff's lot line, in combination with the placement of landscaping blocks, a retaining wall, and a stairway leading down to defendants' dock (at least some of which, from the record before us, appears not to be confined to defendants' side of the Walk) gives the appearance that the Walk is or has been appropriated to fall within the confines of defendants' lot. This could well have a deterrent effect on lot owners who might wish to use the easement. In sum, the fence may both be unnecessary to the effective use of the easement and overburden the servient estate. We are in any event left with a definite and firm conviction that the trial court erred by focusing solely on the fence, by offering no rationale (for finding that the fence did not overburden the Walk) other than that, given the apparently poor relations between plaintiff and defendants, it was "probably beneficial for the parties to keep that fence up," and by failing to address whether the fence and related structures were necessary for the effective use of the easement. *In re Bennett Estate*, 255 Mich App at 549.

With regard to the portion of the Walk owned by defendants, they are permitted to use the property in any manner that does not conflict with the rights of the easement holders (including plaintiff). *Smeberg*, 96 Mich at 385; *Morrow v Boldt*, 203 Mich App 324, 329; 512 NW2d 83 (1994). These rights include the right to unobstructed passage over the Walk at all times, and "such rights as are incidental or necessary to the right of passage." *Morrow*, 203 Mich App at 329. As noted above, we are unable from the record before us to determine the exact location of the entirety of the fence or the other structures placed within the Walk. On remand, and in addition to determining, as discussed earlier in this opinion, which portions (of the fence and other structures) need to be removed as violative of plaintiff's fee interest, the trial court should conduct further proceedings to determine which portions that are erected on defendants' side of the midpoint of the Walk are valid uses of the property that do not conflict with the rights of the easement holders to use the Walk.

### 3. VIOLATION OF THE BCZO

Next, in Count III, plaintiff argues that the fence and a "landscaping wall" (or indeed the erection of any fence or wall within the Walk) violates the BCZO and is thus a nuisance per se.[14]

---

[14] A structure erected in violation of a zoning ordinance constitutes a nuisance per se. MCL 125.3407; *Lima Twp v Bateson*, 302 Mich App 483, 493; 838 NW2d 898 (2013).

We disagree. The trial court did not explicitly rule on whether the fence or wall violates the BCZO; however, as plaintiff raised the issue before the trial court, and the trial court refused to order the removal of the fence or wall, the trial court impliedly rejected plaintiff's argument.

The rules governing statutory interpretation apply to ordinances. *Bonner v Brighton*, 495 Mich 209, 222; 848 NW2d 380 (2014). Thus, this Court's goal in the interpretation of an ordinance is to discern and give effect to the intent of the legislative body. If the language used by the legislative body is clear and unambiguous, the ordinance must be enforced as written. *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 136; 761 NW2d 470 (2008); *Warren's Station, Inc v Bronson*, 241 Mich App 384, 388; 615 NW2d 769 (2000).

Section 514 of the BCZO provides that "[f]ences and walls shall not be located outside or beyond the property or lot lines of the lot or parcel." Barry County Zoning Ordinance, § 514. According to plaintiff, the fence violates the BCZO because it is located on the Walk and the Walk is not a "lot or parcel," as that term is defined by the BCZO.[15] However, "[t]he 'last antecedent' rule of statutory construction provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Stanton v Battle Creek*, 466 Mich 611, 616; 647 NW2d 508 (2002). Plaintiff has pointed to nothing in the BCZO that prohibits applying the modifying clause—"of the lot or parcel"—only to the last antecedent, i.e., "lot lines." In fact, our review of other sections of the BCZO supports the conclusion that the term "property" does not exclusively refer to land that fits the definition of a "lot" or "parcel." Testimony showed that the fence and wall were located entirely within "the property" of the Walk. Because the fence and wall were built within the property of the Walk, they did not violate the BCZO.[16]

## C. STATUTE OF LIMITATIONS

Finally, plaintiff argues that the trial court erred by granting summary disposition on Counts I, II, and III, insofar as they relate to the pathway and stairway, of the first amended complaint. We review de novo trial court's decision on a motion for summary disposition. *Wiggins*, 291 Mich App at 550. Summary disposition is proper under MCR 2.116(C)(7) if

---

[15] The BCZO defines "lot, parcel or tract" as "[a]n area of land separated from other parcels of land by description on a plat, condominium subdivision plan or by metes and bounds description, recorded in the Barry County Office of the Register of deeds and may have a unique tax identification number, and which complies with the dimensional requirements of this Ordinance." Barry County Zoning Ordinance, § 213. Here, the Walk does not meet the dimensional requirements of a lot or parcel, and would appear to fit the BCZO's definition of "private road." *Id*. at § 219.

[16] Of course, as discussed earlier in this opinion, the fact that the fence and wall do not by their mere existence violate the BCZO does not answer the question of whether they are necessary to the effective use of, or overburden, the easement, or whether they encroach on plaintiff's property.

"[e]ntry of judgment . . . is appropriate because of . . . statute of limitations . . . ."  In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must consider any affidavits, depositions, admissions, or other documentary evidence submitted by the parties.  *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).  If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court.  *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010).

A plaintiff shall not bring an action to recover damages for injury to property unless, after the claim first accrued to the plaintiff, the action is commenced within the limitations period.  MCL 600.5805(1).  "[T]he period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."  MCL 600.5805(10).

For many years, Michigan courts recognized an exception to the application of the limitations periods where there were continuing wrongful acts.  *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 280; 769 NW2d 234 (2009).  Under the "continuing wrongs" doctrine, the limitations period, rather than beginning to run on the occurrence of the first wrongful act, did not begin to run until the continuing wrong was abated.  *Id*.  However, the Michigan Supreme Court in 2005 abrogated the continuing wrongs doctrine.  *Id*. at 288.

The limitations period runs from the time the claim accrues.  MCL 600.5827.  "[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."  *Id*.  The term "wrong" in MCL 600.5827 "refers to the date on which the plaintiff was harmed by the defendant's negligent act, not the date on which the defendant acted negligently."  *Marilyn Froling Revocable Living Trust*, 283 Mich App at 290 (citation and quotation marks omitted).  In other words, the "wrong" is "done" when both the act and the injury first occur.  *Id*. at 291.  Thus, in *Marilyn Froling Revocable Living Trust*, this Court concluded that the plaintiff's claims for trespass and nuisance accrued in June 2001 because that was when the plaintiff first experienced flooding on its property after the defendants' last wrongful act.  *Id*.

In Count I of the second amended complaint, plaintiff alleged that defendants trespassed on the Walk and that they did so by placing landscaping blocks on the Walk, raising a portion of the Walk, and erecting a retaining wall and filling the area with gravel.  A trespass is an unauthorized invasion of the private property of another.  *Dalley*, 287 Mich App at 315.  To establish a trespass, there must be proof of an unauthorized intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession.  *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 67; 602 NW2d 215 (1999).  Once such an intrusion is proved, the trespass is established, and the plaintiff is entitled to at least nominal damages.  *Id*.  The alleged act constituting the trespass and the injury to plaintiff occurred when defendants built the pathway and stairway.  The evidence showed that the pathway and stairway were completed no later than September 14, 2009.  Because plaintiff did not file his trespass claim within three years after the claim accrued, the claim (insofar as it sought monetary damages) was time-barred.  MCL 600.5805(1), (10); MCL 600.5827.  The trial court did not err by granting summary

disposition to defendants on count I, insofar as it relates to monetary damages for a trespass or encroachment on plaintiff's land caused by the pathway and stairway.

However, plaintiff's trespass claim sought monetary damages in the alternative. The relief that plaintiff principally sought for defendants' alleged trespass was injunctive in nature, inasmuch as plaintiff requested that the trial court order defendants "to remove all cement landscaping blocks and fill and fencing and order the walk restored to the natural grassy state as previously agreed to by the parties." Plaintiff therefore contends that the trial court should have determined whether the pathway and stairway constituted a seizure of the property in derogation of plaintiff's right to use the Walk. We conclude that, under a fair reading of plaintiff's complaint, plaintiff has alleged that defendants seized a portion of plaintiff's property, i.e., plaintiff's portion of the Walk, and requested that the trial court determine that plaintiff had ownership of Walk to the centerline, and grant injunctive relief to rectify the alleged seizure. Thus, the gravamen of the injunctive relief portion of Count I of plaintiff's complaint is to quiet title to his portion of the Walk. See MCL 600.2932; see also *Adams v Adams*, 276 Mich App 705; 711; 742 NW2d 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.")

The statute of limitations applicable to such a cause of action is set forth in MCL 600.5801, which provides:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

> \* \* \*

> (4) Other cases. In all other cases under this section, the period of limitation is 15 years.

Thus, although plaintiff's trespass claim—to the extent it sought monetary damages—is barred by the statute of limitations (as discussed earlier), plaintiff's trespass claim—to the extent it sought injunctive relief—is not barred by the statute of limitations.[17] The trial court therefore

---

[17] *Terlecki v Stewart*, 278 Mich App 644; 754 NW2d 899 (2008), is not to the contrary. In *Terlecki,* the plaintiffs' property flooded after the defendants took actions on their own property that caused a nearby lake to rise. The trial court denied the defendants' motion for summary disposition. In reversing the trial court, this Court held that the plaintiffs' tort claims for monetary damages were barred by the applicable statutes of limitation, but that the 15-year period of limitations of MCL 600.5801(4) applied to a claim for equitable relief to enforce a flowage easement. Although the Court found that the plaintiffs had not properly pleaded such a cause of action, it specifically authorized the plaintiffs on remand to move to amend their

erred by granting summary disposition in favor of defendants, on statute of limitations grounds, on Count I of plaintiff's second amended complaint, insofar as it sought injunctive relief. Accordingly, we reverse in part and remand for further proceedings consistent with our determination with respect to plaintiff's ownership of a fee interest in the Walk.

In Count II of the second amended complaint, plaintiff alleged that defendants "installed gravel inexpertly" that was to have been contained within the landscaping blocks and that "the installation was not proper." This caused water, gravel, and sand to be cast on "[p]laintiff's property" in such a fashion and so consistently that it had become a nuisance. Nuisance is an interference with the plaintiff's use and enjoyment of his land. *Adams*, 237 Mich App at 59. The act of defendants that caused the alleged nuisance was the installation of gravel that was to have been contained by the landscaping blocks. This act occurred in 2009. However, a claim does not accrue until both the act and the injury occur. *Marilyn Froling Revocable Living Trust*, 283 Mich App at 291. There was evidence to support that the injury, i.e., the flooding of water, gravel, and sand onto plaintiff's property, did not occur until the summer of 2012. Plaintiff alleged that in August 2012, gravel flooded onto his property when there was a heavy downpour. Until then, according to plaintiff, he had not realized the extent of the problem created by the landscaping blocks and the gravel behind it. Because there was evidence to support that the injury did not occur until the summer of 2012, which if established, means that the claim did not accrue until 2012, plaintiff's nuisance claim was not barred by the statute of limitations. The claim was brought within three years after it accrued. The trial court therefore erred by granting summary disposition to defendants on Count II.

In Count III of the first amended complaint, plaintiff alleged that the fence and a "landscaping wall" built by defendants in the Walk violated the BCZO. Again, a structure erected in violation of a zoning ordinance constitutes a nuisance per se. MCL 125.3407; *Lima Twp*, 302 Mich App at 493.

We need not address, however, whether Count III is barred by the applicable statute of limitations. As discussed earlier in this opinion, neither the fence nor the landscaping wall violated the BCZO. Therefore, the trial court did not err by granting summary disposition to defendants on Count III.

IV. CONCLUSION

Affirmed with regard to the main appeal, apart from our conclusion that the trial court erred by referring to the dedication of the Park as a public dedication. Affirmed in part and reversed and remanded in part with regard to the cross appeal. The trial court erred by not determining that plaintiff owned a fee interest in the Walk to the centerline, by failing to determine the extent to which the fence and related structures encroached on plaintiff's property

complaint. In this case, by contrast, we construe plaintiff's pleadings as adequately alleging the seizure of property in which he held a fee interest, as to which he sought equitable relief. This is a claim to which the 15-year limitation period of MCL 600.5801(4) applies. In addition, as in *Terwicki*, plaintiff may on remand move to amend his pleadings to more specifically allege quiet title or ejectment claims.

and to fashion an appropriate remedy, and by holding that the fence did not overburden the easement. Further, plaintiff's nuisance claim regarding the installation of gravel and landscaping blocks was not time-barred; nor was plaintiff's trespass claim (which we construe as a claim to quiet title) insofar as it sought injunctive relief. However, the trial court did not err by determining that the fence and wall did not violate the BCZO, or that plaintiff's trespass and nuisance claims were otherwise time-barred. We remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. No costs may be taxed, neither party having prevailed in full. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Peter D. O'Connell

-15-