*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VIRGINIA PARK SUBDIVISION
ASSOCIATION,

UNPUBLISHED
January 10, 2019

Plaintiff-Appellee,

and

CAROL D. HAIR, SEAN JACQUES, TALIA
SAFARO, ROK IVEZAJ, MARIA IVEZAJ,
LUIGI DEDA, AFERDITA DEDA,
CHRISTOPHER D. YEZBICK, KIMBERLY I.
YEZBICK, GEORGE IVEZAJ, JAMIE IVEZAJ,
DAREN L. REED, JOYCE A. PILLSBURY,
DAVID J. LUCCHETTI, MARK MATKOVICH,
MARILYN E. MILLS, RUSSELL A.
MCCLELLAND, KARINE MCCLELLAND,
GREGORY C. COLEY, NAOMI COLEY,
JOSHUA P. CRESWELL, GAIL CRESWELL,
MICHAEL W. MAURER, EDWARD H.
GILBERT, and FLORIN C. MOLDOVAN,

Plaintiffs-Counterdefendants-
Appellees,

v

PASCAL BROWN and MEGA MANAGEMENT
GROUP,

Defendants,

and

JOANNE BROWN also known as JOANNE
GAINES, KATIE STILL, and BLAIR STILL,

No. 339762
Oakland Circuit Court
LC No. 2017-157802-CH

Defendants-Counterplaintiffs-
Appellants,

and

JULIAN C. URSING and KIMBERLY D.
URSING,

Defendants-Counterplaintiffs.

VIRGINIA PARK SUBDIVISION
ASSOCIATION,

Plaintiff-Appellee,

and

CAROL D. HAIR, SEAN JACQUES, TALIA
SAFARO, ROK IVEZAJ, MARIA IVEZAJ, LUIGI
DEDA, AFERDITA DEDA, CHRISTOPHER D.
YEZBICK, KIMBERLY I. YEZBICK, GEORGE
IVEZAJ, JAMIE IVEZAJ, DAREN L. REED,
JOYCE A. PILLSBURY, DAVID J. LUCCHETTI,
MARK MATKOVICH, MARILYN E. MILLS,
RUSSELL A. MCCLELLAND, KARINE
MCCLELLAND, GREGORY C. COLEY, NAOMI
COLEY, JOSHUA P. CRESWELL, GAIL
CRESWELL, MICHAEL W. MAURER,
EDWARD H. GILBERT, and FLORIN C.
MOLDOVAN,

Plaintiffs-Counterdefendants-
Appellees,

v                                                                    No. 339808
                                                                     Oakland Circuit Court
PASCAL BROWN and MEGA MANAGEMENT              LC No. 2017-157802-CH
GROUP,

Defendants,

and

JOANNE BROWN also known as JOANNE

-2-

GAINES, KATIE STILL, and BLAIR STILL,

     Defendants-Counterplaintiffs,

and

JULIAN C. URSING and KIMBERLY D.
URSING,

     Defendants-Counterplaintiffs-
     Appellants.

---

Before: JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

  These consolidated appeals arise from a single case in the trial court involving a dispute over riparian[1] rights. Defendants Joanne Brown,[2] Katie Still, Blair Still, Julian Ursing, and Kimberly Ursing (collectively the front-lot owners)[3] appeal as of right the trial court's order (1) denying defendants' motion for summary disposition, (2) declaring as a matter of law under MCR 2.116(I)(1) that all lot owners in the Virginia Park Subdivision have a use easement in the platted park but no riparian rights, and dismissing all remaining claims as moot. Docket No. 339762 concerns the appeal filed by Brown and the Stills, and Docket No. 339808 concerns the appeal filed by the Ursings. This Court consolidated both appeals.[4] For the reasons set forth in

---

[1] We acknowledge that the rights at issue in this case technically are littoral rights rather than riparian rights because the dispute involves land that abuts a lake rather than a river. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010). However, we will nonetheless use the term "riparian" in this opinion because that term is often used to refer to both types of land. See *id*.

[2] Joanne Brown is apparently also known as Joanne Gaines.

[3] We have chosen to use the terms "front-lot owners" and "back-lot owners" in this opinion because it seems to be the most clear way to refer to these groups of owners and their respective proximity to the lake. However, we recognize that plaintiffs generally contest this characterization of subdivision lot owners. We clarify that we ascribe no legal significance to these characterizations and that our disposition of this appeal is based instead on the legal analysis that follows in this opinion.

[4] *Virginia Park Subdivision Ass'n v Brown*, unpublished order of the Court of Appeals, entered August 31, 2017 (Docket Nos. 339762 and 339808).

this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The individuals involved in this action are all owners of lots in the Virginia Park Subdivision, located in Oakland County. The subdivision was platted in 1917 and consists of 26 lots, a street, and a park that abuts Walled Lake. Lots 12 through 15 (the front lots) are separated from Walled Lake by the park. Brown owns lots 12 and 13, the Ursings own lot 14, and the Stills own lot 15. According to the plat, these lots all share their eastern boundary line with the western boundary line of the park, and the eastern edge of the park abuts Walled Lake. The remaining subdivision lots (the back lots) are located west of the front lots. All of the individual plaintiffs (collectively the back-lot owners) own back lots. The back lots are separated from Walled Lake by both the front lots and the park. None of the back lots border the park or the lake. The plat dedication provides that "the street and park as shown on said plat are hereby dedicated to the use of lot owners only."

In 2017, a dispute developed between the front-lot owners and back-lot owners over the use of the park and, specifically, rights to install docks and moor boats. The front-lot owners maintained that they exclusively owned the riparian rights in the park and that the back-lot owners only had an easement permitting them to use the park for customary park purposes that did not include the right to install docks or moor watercraft overnight or seasonally.

Plaintiffs, which included the back-lot owners and the Virginia Park Subdivision Association,[5] filed this lawsuit seeking (1) a declaratory judgment that all subdivision lot owners held equal and coextensive rights regarding the ownership and use of the park and (2) to quiet title in favor of all lot owners with a declaration that all lot owners held fee simple title to the park. Plaintiffs additionally asserted a trespass claim and a nuisance claim. Both of these claims were based plaintiffs' allegations that Brown's deck encroached onto the park, that the Stills had a driveway, patio, and well/planter that encroached onto the park, and that the Stills drove vehicles over the park to reach their driveway.

Brown and the Stills subsequently filed counterclaims against the back-lot owners. In Count I, Brown and the Stills sought a declaratory judgment that the back-lot owners only held an irrevocable easement in the park and that the front-lot owners held the underlying fee interest in the park and the exclusive ownership of the riparian rights. In Count II, they sought a judgment quieting title in favor of the front-lot owners, subject to the easement held by the back-lot owners. In Count III, they sought the ejectment of docks and watercraft of certain back-lot owners. In Count IV, they asserted a trespass claim based on the installation of docks and mooring of watercraft by certain back-lot owners. In Counts V and VI, Brown and the Stills asserted that the encroachments alleged by plaintiffs in their trespass and nuisance claims were

---

[5] According to plaintiffs' complaint, the Virginia Park Subdivision Association "is a voluntary, unincorporated association comprised of the owners of lots 1 through 11 and 16 through 26 of the Virginia Park Subdivision."

not actually encroachments, relying on claims of adverse possession, prescriptive easement, and acquiescence. In Count VII, Brown and the Stills sought a declaratory judgment that the Stills could continue to use their current driveway access route to their lot. The Ursings also raised four counterclaims similar to the first four counts raised by Brown and the Stills.

Brown and the Stills moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10) on all of the claims and counterclaims regarding park ownership, riparian rights, dock installation, and watercraft mooring. They argued that the dedication language in the plat granted the back-lot owners an irrevocable easement to use the park for traditional park purposes but did not grant riparian rights to the back-lot owners, that the back-lot owners had no ownership rights in the park that could give rise to riparian rights, and that the front-lot owners had riparian rights because their lots were separated from the lake only by an intervening surface easement or right-of-way. Brown and the Stills maintained that the front lots essentially extended to the water's edge, and that the front-lot owners held the fee interest in the park as well as riparian rights, because the front lots abutted a right-of-way that was contiguous to the water. The Ursings concurred in the motion for summary disposition, expressly adopting the arguments made by Brown and the Stills.

The back-lot owners responded that the dedication language was egalitarian and that the park was owned by all lot owners in the subdivision, not just the front-lot owners. The back-lot owners also argued that the front-lot owners' attempts to claim exclusive ownership rested on cases that were distinguishable from the instant case because they either involved different dedication language or they involved streets or walkways rather than parks. The back-lot owners requested that the trial court grant summary disposition in their favor, concluding that the park was owned by all lot owners in the subdivision or, alternatively, that all lot owners held the same easement rights and none of them held the underlying fee. Additionally, the back-lot owners argued that even if the trial court determined that they held only an easement to the park and rejected their claim of joint ownership in favor of a conclusion that the front-lot owners owned the park, the scope of the easement nonetheless presented a question of fact.

After a hearing on the summary disposition motion, the trial court issued a written opinion and order denying the parties' various requests for summary disposition and "find[ing] that it is appropriate pursuant to MCR 2.116(I)(1)[6] to declare that the plat dedication establishes that all lot owners have an easement in the park and none of the lot owners have riparian rights." The trial court found the caselaw cited by the front-lot owners to be distinguishable; the court concluded that the park was the only riparian land in the subdivision and that the plat dedication granted all of the subdivision lot owners "an irrevocable easement to use the park such that none of the lot owners have riparian rights."

This appeal ensued.

---

[6] MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay."

## II. STANDARD OF REVIEW

We review a trial court's summary disposition ruling de novo, including when a declaratory judgment is sought in the action. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). This Court also reviews de novo a trial court's ruling on equitable matters, including actions of quiet title and ejectment, which have been combined to create a single action to determine interests in land by the Legislature's enactment of MCL 600.2932.[7] *Adams v Adams*, 276 Mich App 704, 712; 742 NW2d 399 (2007); *Dobie v Morrison*, 227 Mich App 536, 538; 575 NW2d 817 (1998); *Dyball v Lennox*, 260 Mich App 698, 703; 680 NW2d 522 (2004). The existence of riparian rights also generally presents a question of law that is reviewed de novo. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010); *Holton v Ward*, 303 Mich App 718, 725; 847 NW2d 1 (2014).

"When a person purchases property that is recorded in a plat, the purchaser receives both the interest described in the deed and the rights indicated in the plat." *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016). Our task when interpreting a plat is to give effect to the plattor's intent, and unambiguous language in a legal instrument is enforced as written. *Id*. However, "[t]he scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal." *Id*. (quotation marks and citation omitted); see also *Dyball*, 260 Mich App at 703 ("The extent of a party's rights under an easement is a question of fact for the trial court, which we review for clear error.") (quotation marks and citation omitted). "The question whether the scope of an easement has been exceeded is also a question of fact reviewed for clear error." *Morse*, 317 Mich App at 540.

Additionally, a summary disposition motion is properly considered under MCR 2.116(C)(10) instead of MCR 2.116(C)(8) when, as is true in this case, it is necessary to consider the evidence submitted by the parties instead of being confined merely to the pleadings themselves. *Maiden*, 461 Mich at 119-120. Under MCR 2.116(C)(10), a court considers "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion," and the moving party is entitled to judgment as a matter of law if there is no genuine issue of material fact. *Id*. at 120 (citation omitted). Furthermore,

> when a court reviews a motion for summary disposition, MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." Under this rule, a trial court has authority to grant summary disposition sua sponte, as long as one of the two conditions in the rule is satisfied. [*Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009) (alteration in original).]

## III. ANALYSIS

---

[7] MCL 600.2932(5) provides that "[a]ctions under this section are equitable in nature."

The front-lot owners and the amicus curiae argue on appeal that the front lots are riparian, and that the front-lot owners exclusively hold both the underlying fee interest in the park and riparian rights, because the front lots are only separated from the lake by a surface easement dedicated as a private park. According to the front-lot owners, the dedication granted the back-lot owners only an irrevocable easement to use the park for traditional and customary park purposes that does not include an ownership interest in the park or the exercise of riparian rights.

A parcel is considered "riparian land" if it "includes therein a part of or is bounded by a natural water course." *2000 Baum Family Trust*, 488 Mich at 166 (quotation marks and citation omitted). Owners of riparian land hold certain exclusive rights, including "the right to erect and maintain docks, as well as to permanently anchor boats off the shore." *Id*. The plat in the instant case shows that the eastern boundary of each front lot abuts the western boundary of the park and that the front lots thus do not extend any further east. The area of land designated as a park is situated between the front lots and the lake, with the eastern edge of the park abutting the lake. Hence, the front lots in this case are not riparian in the ordinary sense and do not satisfy this general definition of riparian land. "Generally, it is an 'indispensable requisite' that riparian land actually touch the water." *Id*. at 167 (citation omitted). "Normally, the interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner." *Id*. (quotation marks and citation omitted).

However, there are exceptions to this general rule. In *Croucher v Wooster*, 271 Mich 337, 344-345; 260 NW 739 (1935), our Supreme Court adopted the following rule: "in the absence of an intention of the parties appearing to the contrary, the conveyance of a parcel of land bordering on a highway contiguous to a lake shore conveys the appurtenant riparian rights." In *Croucher*, the highway separating the plaintiffs' property from the lake was a public road that had been established as a highway by user. *Id*. at 339-340.

In *Thies v Howland*, 424 Mich 282, 290; 380 NW2d 463 (1985), our Supreme Court extended the rule announced in *Croucher*, concluding that it was "equally applicable to ways dedicated to the private use of a finite number of persons." *Thies* involved a dispute between first-row lot owners and second-row lot owners over riparian rights: the plaintiffs owned first-row lots that were separated from the lake by a "twelve-foot wide 'walk' that [ran] immediately along the lakeshore," and the defendants owned lots in the second row of the subdivision that were situated with the first-row lots being between the second-row lots and the lake. *Id*. at 286. The *Thies* Court held:

> Unless a contrary intention appears, owners of land abutting any right of way which is contiguous to the water are presumed to own the fee in the entire way, subject to the easement. Since the owner's property is deemed to run to the water, it is riparian property. Thus, plaintiffs are presumed to own the fee in the walk running along the front of their lots unless the plattors intended otherwise. [*Id*. at 293 (citations omitted).]

In reaching this holding, the *Thies* Court explained as follows:

> When a conveyance refers to a plat which represents lots as bounded by a street and describes the lots by numbers, the reference is equivalent to express language

in the deed giving the street as a boundary. Unless a contrary intent appears, owners of land abutting a street are presumed to own the fee in the street to the center, subject to the easement. However, this rule is not so easily applied where the street is contiguous to the water since there are abutting lots only on one side. The crucial question is who owns the other half of the way which is clearly riparian property—the plattors, the "front lot" owners, or the persons to whom the way is dedicated?

Although there is conflicting authority in other jurisdictions, the issue was settled in this state by *Croucher*. There, the dedication of the plat described the plattors' land as lying south of a public highway that paralleled the lakeshore. The two lots at issue abutted the highway which, at those points, was in direct contact with the water. All of the deeds described the lots only by the lot numbers noted on the plat. The plattors conveyed each lot at issue twice. The question presented was whether the plattors had parted with all of their interest in each lot, including their riparian rights, under the first conveyance. This Court concluded that a fee interest in each lot, which included the adjoining portion of the highway and the appurtenant riparian rights, passed to the first grantees, subject to the public's use of the highway . . . . [*Id*. at 291-292 (citations omitted).]

In *2000 Baum Family Trust*, 488 Mich at 138, 140, 186, our Supreme Court held that the owners of property separated from a lake by a public road running parallel to the lakeshore possess riparian rights, reaffirming this well-established principle; the Court further held that the county road commission that had accepted the statutory dedication of the public road and maintained the road did not have riparian rights. As pertinent to our discussion in the instant case, our Supreme Court in *2000 Baum Family Trust* discussed the principle that a common-law dedication of a road for public use does not ordinarily result in conveying the fee to that land. *Id*. at 147-148. The Court explained that "the fee in the soil remains in the original owner, where a public road is established over it; but the use of the road is in the public. The owner parts with this use only." *Id*. at 148 (quotation marks and citation omitted). The Court also cited the rule that "a conveyance of land bounded on a highway, street, or alley carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time of conveyance owned to the center and there are no words in the deed showing a contrary intent . . . ." *Id*. at 148-149 (quotation marks and citation omitted; ellipsis in original). Additionally, the Court explained that both statutory dedications accomplished through a recorded plat and common-law dedications resulted in the owner of land abutting the street possessing a reversionary interest to the center of the street. *Id*. at 149, 155. In reaching its holding, the Court examined the dedication of the road "to the use of the public" contained in the plat at issue and the relevant statutory language of the plat act of 1887, which was the plat act in effect at the time that the plat was recorded. *Id*. at 141, 144, 158-159, 161-164, 184. The Court concluded that the dedication only granted nominal title or a "base fee" to the governmental entity, which the Court explained was "a fee *in name only*" that did not convey beneficial ownership to the governmental entity or otherwise expand the rights in dedicated land traditionally enjoyed by the government. *Id*. at 163-166.

Our Supreme Court in *2000 Baum Family Trust* summarized its holding and reasoning as follows:

The "fee" conveyed by the 1887 plat act is held "in trust to and for the uses and purposes therein designated, and for no other use or purpose whatsoever." The particular property interest created by the statute, a "base fee," conveys to the receiving governmental entity only "nominal title." A base fee in a public road running parallel to the water has never been thought to divest front-lot property owners of their riparian rights, much less convey riparian rights to the county. In the history of Michigan property law, *no* Michigan decision has ever suggested these propositions, and *every* Michigan decision that has addressed the exact issue before us has concluded as we do, that riparian rights rest with the front-lot owners. On the authority of our longstanding caselaw, and mindful of the particularly compelling mandates of stare decisis in the realm of property law, we hold that plaintiffs have riparian rights, as similarly situated persons have *always* had in this state. [*Id*. at 186 (citations omitted).]

In sum, while owners of property abutting a road or walkway, whether public or private, that is contiguous and parallel to the shoreline are presumed to own the fee to the water's edge subject to the easement and to possess riparian rights, the rational for this rule is based on the well-established principle that owners of land abutting a road retain ownership of the fee underlying the road subject to the easement. While a landowner's fee interest in the road typically only extends to the center of the road, when the other side of the road abuts the shoreline rather than another parcel of land, the fee interest instead continues to the water. *Thies* 424 Mich at 291-292. Hence, the possession of riparian rights by owners of property separated from the shoreline by only a road or walkway is grounded in the legal principles generally applicable to owners of property abutting roads. This rule is not based on the mere fact that such a property owner is closer to the water than the owner of what may be called a "back lot."

The front-lot owners and amicus curiae in this case rely on *Dobie*, 227 Mich App 536, essentially for the proposition that this fairly broad rule described above with respect to roads and walkways also applies with equal force when an owner's property is only separated from the water by a *park* that is subject to an easement. *Dobie* involved a dispute over riparian rights between back-lot owners and one front-lot owner whose property was separated from the lake by a park. *Id*. at 537. The plat indicated that the park was dedicated to "the use of the owners of lots in this plat which have no lake frontage." *Id*. In *Dobie*, this Court affirmed the trial court's summary disposition ruling that the front-lot owner retained ownership in fee to the park, along with riparian rights. *Id*. at 538, 540.

However, a closer examination of this Court's reasoning in *Dobie* reveals that it does not set forth the broad, bright-line rule for which the front-lot owners and amici curiae in this case advocate. The *Dobie* Court began by discussing the holdings and reasoning of *Croucher* and *Thies* and then stated as follows:

[T]his case is not controlled by *Thies*. Although the park in this case was primarily created to provide the back lot owners with access to the lakefront, *a park is not the same as a right of way*. The reasoning in *Thies* was predicated on a mere walkway dividing the riparian owners from the body of water in that case. *We do not regard it as appropriate to compare a narrow walkway along a body of water to the relatively large park in this case*. Absent a contrary indication, it is

-9-

eminently reasonable to presume that a walkway along a lake was placed merely as an easement to provide access to the lake and not with the intent to convey actual fee ownership of the land containing the walkway. The same is simply not true of the relatively large park in this case. [*Id*. at 539-540 (emphasis added; citation omitted).]

Next, after rejecting the application of the road and walkway cases to the circumstances involving a park, the *Dobie* Court determined that the dedication language providing that the park was for "*the use* of the owners of lots in this plat which have no lake frontage" constituted the grant of an easement rather than a grant of fee ownership rights. *Id*. at 540. The *Dobie* Court further concluded that this dedication language did not purport to transfer ownership of the park from the original plattor, who was the initial owner of the front lot at issue, to the back-lot owners. *Id*. The Court then noted that the undisputed evidence that the original plattor "had supplied the park with electricity, portable toilets, and picnic tables support[ed] the conclusion that the [original plattor] intended to retain general control and, accordingly, ownership of the park." *Id*.

Thus, *Dobie* merely stands for the proposition that a plat's dedication of a park for "the use" of certain lot owners conveys only an easement to those lot owners, and the contemporaneous facts and circumstances may determine the ownership of the park when the dedication is silent as to the allocation of the ownership interest in the park. Furthermore, *Dobie* makes clear that the rules announced in *Croucher* and *Thies* apply to easements in the form of roads or walkways and do not somehow automatically apply to *all* forms of easements that could potentially separate a lot from the shoreline. More specifically, *Dobie* rejected the extension of the rule for roads and walkways to an easement granted for purposes of maintaining a private park.[8] In this case, the front-lot owners and amicus curiae fail to fully comprehend the underlying rationale supporting the holdings of *Croucher*, *Thies*, *Baum*, and *Dobie*, and they fail to understand that there is no bright-line rule granting riparian rights to all owners of property that is separated from the shoreline by some form of an easement.

With the above legal principles in mind, we now must examine the dedication language in the plat at issue. "When a person purchases property that is recorded in a plat, the purchaser receives both the interest described in the deed and the rights indicated in the plat." *Morse*, 317 Mich App at 534. In this case, because the front-lot owners' and amici curiae's arguments are premised on the dedication language in the plat and the location of the front lots in relation to the park and the lake, we need only address the language of the plat to determine the lot owners' rights.[9] "The first principle of the law of dedication is that all cases must be considered with

_____

[8] Notably, the park in *Dobie* was not dedicated to the use of the public, just as the park in the instant case also was not dedicated to the use of the public.

[9] The front-lot owners claim that deeds show a chain of title between them and the original plattor of the Virginia Park Subdivision, but this is irrelevant in the absence of evidence that the deeds actually describe an ownership interest in the park. The front-lot owners did not submit such a deed in the trial court proceedings below. To the extent that the front-lot owners now rely

reference to the use for which they are made," and "the scope of the dedication controls the resolution of this question." *2000 Baum Family Trust*, 488 Mich at 183 (quotation marks and citation omitted). "[D]edications of land for private use in plats before 1967 PA 288 took effect convey at least an irrevocable easement in the dedicated land." *Little v Hirschman*, 469 Mich 553, 564; 677 NW2d 319 (2004). "When interpreting a plat, this Court seeks to effectuate the intent of the plattor." *Morse*, 317 Mich App at 534. "Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). "If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Id*.

The dedication at issue in the instant case states that "the street and park as shown on said plat are hereby dedicated to the use of lot owners only." Language dedicating land for other's "use" has consistently been held to constitute the grant of an easement and to ordinarily not convey a fee interest. See, e.g., *Thies*, 424 Mich at 293; *Morse*, 317 Mich App at 534; *Dobie*, 227 Mich App at 540. The dedication language refers only to the *use* of the park and gives no indication that any ownership interest is being transferred. "An easement represents the right to use another's land for a specified purpose." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 678; 619 NW2d 725 (2000). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Id*. at 679 n 2. Hence, the plat dedication in this case granted only an easement in the park.

Next, we must ascertain the holders of the easement. In *Morse*, 317 Mich App at 534-535, this Court concluded that language dedicating a park to " 'the use of the present and future

---

on appeal on deeds that were not part of the summary disposition proceedings in the trial court, this constitutes an attempt to impermissibly expand the record on appeal. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal."). In reviewing a trial court's summary disposition ruling, we do not consider evidence that was not then before the trial court. *Quinto v Cross & Peters Co*, 451 Mich 358, 366 n 5; 547 NW2d 314 (1996) (declining on review of a trial court's grant of summary disposition to consider evidence that was submitted by the plaintiff after the trial court issued its ruling, reasoning that a trial court only considers the evidence then available to it when deciding a summary disposition motion). Moreover, the building restriction in the deed that the front-lot owners rely on to argue that the lakeshore is included within the boundaries of their lots does not explicitly mention the park or the fee interest of the park or lakeshore. Arguments about the potential meaning implied by the restriction should be made in the trial court in the first instance. The front-lot owners did not develop a record in the trial court for this theory of ownership, and this issue is therefore not properly before this Court for review at this juncture. "Appellate review is limited to issues actually decided by the trial court." *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994).

lot owners' " was a grant of an easement in the park *to the present and future lot owners*. In *Dobie*, 227 Mich App at 537, 540 this Court concluded that the dedication of a park to " 'the use of the owners of lots in this plat which have no lake frontage' " conveyed an easement to the back-lot owners in the subdivision. Therefore, the dedication language in this case merely conveyed the park easement to all "lot owners," which includes both front-lot and back-lot owners, and the dedication did not convey a fee interest in the park to any lot owners. *Thies*, 424 Mich at 293; *Morse*, 317 Mich App at 534; *Dobie*, 227 Mich App at 540.

The front-lot owners do not dispute the conclusion that all of the subdivision lot owners hold an easement in the park. Instead, the front-lot owners and amicus curiae advocate for a bright-line rule that because the property separating the front-lots from the lake is subject to an easement, the front lots must own the underlying fee to the park. As previously discussed, this argument is unavailing. The fact that the front lots are only separated from the lake by a park that is subject to an easement does not itself mean that the front-lot owners hold an ownership interest in the park or riparian rights. We therefore affirm the trial court's ruling that the plat dedication merely granted to all lot owners an easement to use the park.

However, the trial court's conclusion that all of the lot owners hold an easement to use the park did not fully resolve the dispute in this case, which revolved around a conflict over the lot owners' ability to install docks and moor boats. There are multiple owners of front and back lots involved in this lawsuit and only a finite area of park property abutting the lake. When the dedication in a plat grants an easement to the owners of lots in the subdivision, those easement rights "may not be infringed by one lot owner for his own convenience to the detriment of his fellow lot owners." *Minnis v Jyleen*, 333 Mich 447, 449, 451, 453-454; 53 NW2d 328 (1952). "A person entitled to the use of an easement cannot materially increase the burden upon the servient estate beyond what was originally contemplated." *Thies*, 424 Mich at 297. Furthermore, "[w]hile full riparian rights and ownership may not be severed from riparian land and transferred to nonriparian backlot owners, Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian." *Dyball*, 260 Mich App at 706 (quotation marks and citation omitted). As previously noted, the scope and extent of an easement, as well as determining whether the scope of an easement has been exceeded, generally present questions of fact. *Morse*, 317 Mich App at 534, 540.

In this case, although the trial court determined that the plat dedication granted an easement to use the park to all of the lot owners and did not grant riparian rights to any lot owners, the trial court did not issue a ruling about the nature of the use rights that were within the scope of the easement held by the lot owners. Without a determination of the scope of the easement and whether the easement permitted any uses of a nature similar to those rights that are traditionally considered riparian rights (even though the plat did not actually grant ownership of riparian rights to any lot owner), the lot owners cannot know if they are infringing on the easement rights of other lot owners or materially increasing the burden of the easement on the servient estate. *Minnis*, 333 Mich at 453-454; *Thies*, 424 Mich at 297. As our Supreme Court explained in *Thies*, 424 Mich at 289:

> Even if we conclude that defendants merely have an easement interest in the walk and alleys, they may still prevail. Plaintiffs cannot prevent defendants

from erecting a dock or permanently anchoring their boats if these activities are within the scope of the plat's dedication, and do not unreasonably interfere with plaintiff's use and enjoyment of their property. The ownership of the walk and alleys and the scope of the dedication of these lands are interrelated, but distinct inquiries. [Citation omitted.]

Because the trial court did not rule on the scope of the easement, we decline to address this issue further. *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994) ("Appellate review is limited to issues actually decided by the trial court.").

Additionally, Brown and the Stills argue that the trial court erred by dismissing Counts VI and VII of their counterclaim. As an initial matter, the trial court did not dismiss Count VII for being moot; it specifically stated in its opinion and order that it was deciding all of the declaratory judgment counts, including Count VII of the counterclaim filed by Brown and the Stills. However, Count VI appears to involve questions about the Stills exceeding their right to use the park property. Because it is necessary to determine the scope of the easement in order to resolve such issues, Counts VI could not be dismissed on the ground of mootness. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). In this case, such an event has not occurred. Instead, the scope of the Stills' permissible use of the park pursuant to their easement is still unresolved. Therefore, the trial court erred by dismissing this count on the ground of mootness.

In conclusion, we affirm the trial court to the extent that it determined that the current record demonstrated that the plat did not grant riparian rights to any lot owners and instead granted all lot owners an easement to use the park. We reverse the trial court's grant of summary disposition and its ruling dismissing Count VI of the counterclaim filed by Brown and the Stills as moot. We remand this matter for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

-13-