*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EESAM ARABBO and SALWA ARABBO,

        Plaintiffs/Counterdefendants-
        Appellants,

v

JOHN PATERSON, Personal Representative of the
ESTATE OF ROBERT WEST and the ESTATE OF
HANNELORE WEST,

        Defendants/Counterplaintiffs-
        Appellees.

UNPUBLISHED
March 10, 2025
8:39 AM

No. 368091
Sanilac Circuit Court
LC No. 17-037024-CZ

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER[*], JJ.

PER CURIAM.

Plaintiffs/counterdefendants Eesam Arabbo and Salwa Arabbo appeal by right the jury's judgment of no cause of action in favor of defendant/counterplaintiff John Paterson, the personal representative of defendant/counterplaintiffs the Estate of Robert West and the Estate of Hannelore West. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The background facts of this case were provided in this Court's previous opinion:

This case concerns two parcels of property that abut Lake Huron. In 1989, Hannelore West and her since-deceased husband, Robert West, purchased 1081 South Lakeshore. In 2016, plaintiffs purchased the adjacent property to the south at 1095 South Lakeshore. Plaintiffs' "main home" is a red cottage that has stairs

---

[*] Former Court of Appeals Judge, sitting on the Court of Appeals by Assignment.

leading to a boathouse near the lake. There is also a white cottage on plaintiffs' property by the road. The area between the parties' properties is sloped.

In May or June 2016, the Wests hired a company named Timberwolf to cut down greenery on their property because their realtor suggested it would increase the resale value of the property by allowing potential buyers to view the lake from the living room. In October 2016, Matthew Sheridan surveyed defendants' property and placed survey stakes from the top to the bottom of the hill along with string to connect the stakes. According to Mr. West's *de benne esse* deposition, Mr. Arabbo removed all but one stake.

In October 2017, plaintiffs had Thomas E. Jacques inspect their property and had Weston Jerome Bloedell III inspect the stairs leading to the boathouse. Using defendants' survey, Jacques estimated that the area cut was 1,500 to 2,000 square feet and that 750 square feet of that area was on plaintiffs' property. In particular, Jacques concluded that one "freshly cut" tree and several shrubs were cut in this area. Bloedell observed that there was not only damage to the stairs, but also the foundation posts. Bloedell believed that the damage to the foundation posts was caused by water. He was not sure when the damage began but suggested that the damage occurred over several years.

Plaintiffs filed a complaint, alleging trespass. Plaintiffs later filed an amended complaint adding claims of negligence and nuisance. Plaintiffs alleged that in the process of cutting the greenery, trees and bushes were also removed on their property. Plaintiffs argued that the cutting of the greenery increased the surface-water runoff running from defendants' property, causing damage to the stairs of the red cottage and damage to the foundation of the white cottage.

After a two-day jury trial, at the conclusion of the presentation of evidence, defendants' counsel moved for a directed verdict on all claims. Defendants' counsel argued that defendants could not be held liable for Timberwolf's negligence and that plaintiffs failed to establish a boundary line. The trial court granted defendants' motion on all claims on the basis that no evidence had been presented establishing the boundary line between the parties' properties. [*Id*. at 1-2 (footnote omitted, stating that "[d]efendants filed a counterclaim of trespass, which was later withdrawn.").]

Plaintiffs appealed the trial court's rulings, and we affirmed the directed verdicts in favor of defendants on plaintiffs' claims of negligence and nuisance. *Id*. at 2-3. However, we vacated the directed verdict on plaintiffs' trespass claim and remanded the matter to the trial court for further proceedings on trespass only in front of a different judge. *Id*. at 2-4. The Court stated:

Although the trial court's decision to grant defendants' motion for a directed verdict as to plaintiffs' claims of negligence and nuisance was harmless, it was not harmless as to plaintiffs' claim of trespass. This Court has stated:

> Generally, all who wrongfully contribute to the commission of a trespass are equally liable with the person committing the act complained of. Persons who do not actively participate in the commission of the trespass must do something by way of encouragement, advice, or suggestion that leads to the commission of the trespass in order to render them liable as joint trespassers. There is no joint trespass where defendant's independent acts contributed to the result or where they cooperated to do a lawful act and in doing it some of them committed a trespass. [*Helsel v Morcom*, 219 Mich App 14, 22-23; 555 NW2d 852 (1996).]

In this case, although the Wests did not cut down the greenery, Mr. West hired Timberwolf and authorized the cutting of the greenery to increase the resale value of his property. As previously concluded, defendants' survey established the boundary line between the parties' properties. Mr. West testified that none of the greenery removed was on plaintiffs' property, while Jacques testified that approximately 750 square feet of the greenery was cut on plaintiffs' property. Therefore, there was a factual dispute as to whether a trespass occurred and whether defendants could be liable for that trespass.

Additionally, there was a factual dispute as to whether the surface water could constitute an actionable trespass. A plaintiff is required to accept the surface-water runoff that naturally flows from neighboring dominant estates. *Wiggins* [*v City of Burton*, 291 Mich App 532, 565; 805 NW2d 517 (2011)]. However, "a defendant's unauthorized act of causing excess waters to flow onto another person's property constitutes a trespass." *Id*. at 566. In this case, Mr. Arabbo testified that he did not notice water flowing from defendants' property to his property until the greenery was removed. Jacques testified that vegetation slows the flow of water and therefore causes less erosion. Jacques noticed erosion at the bottom of the hill, which was "where the water would have picked up speed." Bloedell testified that there was not only damage to the stairs leading to the boathouse, but also to the foundation posts. Although Bloedell suggested that the damage began well before the greenery was removed, that is not to say that the removal of the greenery did not contribute to the damage. On the basis of this testimony, we conclude that there was a disputed fact as to whether the cutting of the greenery materially increased the natural flow that went onto plaintiffs' property. If the jury determined that the Wests contributed to the commission of the trespass, i.e., the cutting of the greenery, and that this trespass materially increased the natural flow of water that went onto plaintiffs' property, plaintiffs would be entitled to at least nominal damages for the surface-water runoff. See *id*. at 566-567. [*Arabbo*, unpub op at 4.]

After the case was remanded, Hannelore passed away and the personal representative of her estate was substituted as the defendant in her place. The case proceeded to a second jury trial in May 2022. Many of the same witnesses testified at trial, including Eesam, Bloedell, and Jacques, and Robert's predeath deposition testimony was read into the record. Eesam testified that greenery was removed on his side of the property line after Robert directed Timberwolf to clear

-3-

trees on defendants' property. Eesam testified that after the clearing, he saw water run from defendants' property down to plaintiffs' property, causing damage to the stairs and deck of plaintiffs' boathouse. Eesam also testified that defendants' garage used to have gutters, but they were removed between 2006 and 2010, and thereafter, water ran off defendants' garage onto plaintiffs' property and caused damage to the foundation of plaintiffs' white cottage located next to defendants' garage. Bloedell and Jacques testified as experts in construction and forestry, respectively, and testified about the damages and estimated repairs needed on plaintiffs' property. Robert, however, testified at his deposition that although he directed Timberwolf to clear trees, all of the trees and greenery cleared were on defendants' side of the property line; no trees were removed from plaintiffs' property.

After plaintiffs rested, defendants moved for directed verdicts as to all of plaintiffs' claims against the Estate of Hannelore, as to plaintiffs' trespass claim relating to water runoff from defendants' garage, and as to the trespass claim against the Estate of Robert. The court denied defendants' motion as to the Estate of Robert, but granted a directed verdict in favor of the Estate of Hannelore because she did not direct any of the tree cutting; rather, Robert did. The court also granted defendants motion as to the trespass claim related to water running off defendants' garage, reasoning that there was no evidence that defendants had a duty to have gutters on the garage and no evidence of damage to plaintiffs' cottage. After the testimony of defendants' surveyor expert, John Milletics, the jury returned a verdict finding there was no physical invasion on plaintiffs' property, and the court entered a judgment of no cause of action in favor of defendants.

After trial, plaintiffs moved for judgment notwithstanding the verdict or, in the alternative, a new trial, arguing that the evidence was sufficient to establish an invasion of plaintiffs' property to establish a trespass. Plaintiffs also moved for reconsideration of the directed verdicts entered in favor of the Estate of Hannelore and regarding the garage-related trespass claim. Plaintiffs asserted that as part-owner of the dominant property, Hannelore was responsible for any change in the condition of the land that put a greater burden on the servient estate, i.e., increased water runoff. Plaintiffs also argued that the directed verdict entered on the garage-related claim was in error where evidence established that the removal of the gutters increased water flow off defendants' roof to the foundation of plaintiffs' cottage, causing damage to the foundation. The trial court denied plaintiffs all relief, and this appeal followed.

## II. JUDGMENT NOTWITHSTANDING THE VERDICT

Plaintiffs first argue that they are entitled to a judgment notwithstanding the verdict or, in the alternative, a new trial, because the evidence established an invasion on their property sufficient to establish that a trespass occurred, notwithstanding the jury verdict that there was "no invasion." We disagree.

## A. STANDARDS OF REVIEW

The trial court's decision on a motion for judgment notwithstanding the verdict is reviewed de novo. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). "The appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Id*. (quotation marks and citation omitted). "This

Court reviews for an abuse of discretion a trial court's ultimate decision whether to grant a new trial, but considers de novo any questions of law that arise." *Dorsey v Surgical Institute of Mich, LLC*, 338 Mich App 199, 223; 979 NW2d 681 (2021) (quotation marks and citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Bradley v Progressive Marathon Ins Co*, 345 Mich App 126, 131; 3 NW3d 559 (2022) (quotation marks and citation omitted).

## B. ANALYSIS

As an initial matter, defendants asserted in the lower court and on appeal that plaintiffs' failure to move for a directed verdict precluded plaintiffs from receiving a judgment notwithstanding the verdict. We disagree. There is nothing in MCR 2.610 that requires a party to move for directed verdict in order to be granted a judgment notwithstanding the verdict. See *Napier v Jacobs*, 429 Mich 222, 229; 414 NW2d 862 (1987) ("[I]n general, motions for directed verdict under MCR 2.515 are no longer required in order to move for judgment notwithstanding the verdict under MCR 2.610 . . . ."). Thus, plaintiffs' failure to move for directed verdict did not preclude their ability to move for judgment notwithstanding the verdict nor did it waive this issue on appeal.

Defendants also assert that the law-of-the-case doctrine barred plaintiffs' motion for judgment notwithstanding the verdict where this Court held in its previous opinion that the plaintiffs needed to show that the Wests encouraged, advised, or suggested that Timberwolf trespassed on plaintiffs' property, and plaintiffs failed to do so. The law-of-the-case doctrine "is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). However, the doctrine only applies to issues "*actually decided*, either implicitly or explicitly, in the prior appeal." *Id*. at 287 (quotation marks and citation omitted). In this Court's previous decision, we held that there were factual disputes regarding whether a trespass occurred as to whether trees and greenery were removed from plaintiffs' property, and as to whether any surface water could constitute an actionable trespass. See *Arabbo*, unpub op at 4. Thus, the issue of trespass was not " 'actually decided' " by the Court in the previous opinion; rather, the case was remanded on that issue specifically. *Rott*, 508 Mich at 287 (emphasis and citation omitted). As such, the law-of-the-case doctrine did not preclude plaintiffs from filing their motion for judgment notwithstanding the verdict.

Turning to the merits of plaintiffs' appeal, they argue that the jury verdict—that there was "no invasion" on their property—was against the great weight of the evidence because the evidence established a clearing on plaintiffs' land that caused increased water runoff; therefore, plaintiffs were entitled to judgment notwithstanding the verdict or a new trial on their trespass claim. To establish trespass, plaintiffs must establish that there was "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Wiggins*, 291 Mich App at 555 (quotation marks and citation omitted). When the elements of trespass are established, "the plaintiff is presumptively entitled to at least nominal damages." *Id*. (quotation marks and citation omitted).

"A motion for [judgment notwithstanding the verdict] should be granted when the evidence, viewed in the light most favorable to the nonmovant, fails to establish a claim as a matter

of law." *Dorsey*, 338 Mich App at 230. Judgment notwithstanding the verdict is "improper where reasonable minds could differ on issues of fact." *Clemens v Lesnek*, 200 Mich App 456, 461; 505 NW2d 283 (1993) (quotation marks and citation omitted). Under MCR 2.611(A)(1)(e), a trial court may grant a new trial when a jury's verdict was "against the great weight of the evidence or contrary to law." This Court gives substantial deference to a trial court's determination that a verdict is not against the great weight of the evidence, and neither this Court nor the trial court may substitute its judgment for that of the jury unless the record reveals that the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551; 965 NW2d 121 (2020) (quotation marks and citation omitted).

Plaintiffs argue that they were entitled to judgment notwithstanding the verdict or a new trial because the evidence established an invasion on their property sufficient to establish that a trespass occurred. They rely on evidence establishing the boundary line, which was lacking at the first trial, and cite evidence to establish that trees and greenery were cleared on their property, including Robert's testimony that he directed Timberwolf to clear trees and Eesam's testimony that trees and greenery were removed from his side of the property line in 2016. Lastly, plaintiffs rely on Milletics's survey showing water would flow from defendants' property south to plaintiffs' property, and Jacques's testimony that the clearing would cause excess runoff water onto plaintiffs' property.

Because the elevation is higher on defendants' property and lower on plaintiffs' property, defendants' property is considered the dominant estate and plaintiffs' property is the servient estate. See *id*. at 563. The natural flow of surface water from the dominant estate forms a "natural servitude" encumbering the servient estate, which the servient estate must accept. *Id*. However, "the owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water." *Id*. at 564 (quotation marks and citation omitted). "[S]urface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow[.]" *Id*. at 565 (quotation marks, citation, and emphasis omitted). "[A] defendant's unauthorized act of causing excess waters to flow onto another person's property constitutes a trespass." *Id*. at 566.

Viewing the evidence in the light most favorable to plaintiffs, the trial court did not err in denying their motion for judgment notwithstanding the verdict or abuse its discretion in denying a new trial because conflicting evidence was presented at trial such that "reasonable minds could differ on issues of fact." *Clemens*, 200 Mich App at 461 (quotation marks and citation omitted). Unlike the first trial, evidence was admitted establishing the boundary line between the parties' properties. Robert believed the boundary line was that established by the Sheridan survey, which was done after the clearing. Milletics performed a boundary survey in May 2017. He was to review the survey done by Sheridan and determined that that boundary line was correct. Milletics also confirmed that the fence plaintiffs built was on the right boundary line. Plaintiffs did not dispute this evidence of the boundary line or offer any evidence indicating the property line was in a different place.

Eesam testified that in May or June of 2016, trees and shrubs were removed from his side of the property line so much so that he could now see the Wests' garage, which had previously been blocked by the greenery. Eesam was told by Robert that Robert had someone else cut down

the trees. Pictures were admitted at trial, which Eesam asserted showed clearing of greenery on his property, as well as water damage to the posts and stairs of the boathouse. Eesam testified that after the clearing, he saw more water running down from defendants' property than before the clearing. Plaintiffs' construction expert, Bloedell, testified that he observed the rotten posts, and opined that water striking against plaintiffs' deck would make it deteriorate faster.

Robert, however, testified that all the trees that were cut down were on his property, not plaintiffs' property. He directed Timberwolf to clear trees "on the bank" and "on that side of the hill," which was on his property, and testified that the trees Timberwolf removed were north of the property line on defendants' property. Although plaintiffs relied on Jacques's testimony that 759 square feet had been cleared on plaintiffs' property, Jacques also testified that because he was commissioned after the clearing had been done, it was difficult to determine what had been removed or damaged. Jacques testified that the removal of greenery from both properties would have an effect on the stabilization of the soil and, without vegetation, there *could be* more runoff; however, Jacques testified that he did not see significant signs of erosion at the property. Milletics also testified that on the basis of the topographical survey he performed, there was no indication that water was flowing south to plaintiffs' property before going east to the lake.

"The question of witness credibility is generally left for the finder of fact to assess." *Barnes*, 334 Mich App at 551-552. "Similarly, it is for the jury to decide how much weight should be given to testimony." *Id*. Given the conflicting testimony about whether greenery was cleared from plaintiffs' property, and whether the clearing caused an increase of runoff water onto plaintiffs' property, the trial court did not err in denying plaintiffs' motion for judgment notwithstanding the verdict because reasonable minds could differ on these material facts. See *Clemens*, 200 Mich App at 461. Similarly, it was not an abuse of discretion for the trial court to deny plaintiffs a new trial because the record does not reveal that the evidence preponderated so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. See *Barnes*, 334 Mich App at 551. There was competent evidence in the record suggesting there was no clearing of greenery on plaintiffs' property and no signs of erosion, and it was within the province of the jury to give credibility and weight to that testimony. *Id*. Accordingly, the trial court did not err when it denied plaintiffs' motion for judgment notwithstanding the verdict or abuse its discretion when it denied plaintiffs' motion for new trial on their trespass claim.

## III. DIRECTED VERDICTS

Plaintiffs also argue that the trial court erred when it granted defendants' motions for directed verdict on plaintiffs' claims against the Estate of Hannelore and plaintiffs' claim related to water runoff from defendants' garage, and that the court abused its discretion when it denied reconsideration of these orders. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for directed verdict. *In re NRC*, 346 Mich App 54, 58; 11 NW3d 296 (2023). "A motion for a directed verdict challenges the sufficiency of the evidence." *Barnes*, 334 Mich App at 550. The court may direct a verdict when "viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). Moreover,

"[i]f reasonable persons could honestly reach different conclusions regarding whether the nonmoving party established a claim, the motion for a directed verdict must be denied, with the case being resolved by the jury." *Id*. This Court "recognizes the jury's and the judge's unique opportunity to observe the witnesses, as well as the factfinder's responsibility to determine the credibility and weight of trial testimony. Credibility determinations are inappropriate for purposes of ruling on a motion for a directed verdict." *Id*. (quotation marks and citations omitted).

This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Tindle v Legend Health, PLLC*, 346 Mich App 468, 474; 12 NW3d 667 (2023). "An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks, brackets, and citation omitted).

B. ANALYSIS

1. ESTATE OF HANNELORE

Defendants moved for a directed verdict on all of plaintiffs' claims concerning the Estate of Hannelore because, after plaintiffs' case-in-chief was presented, Hannelore was only briefly mentioned by the witnesses and other evidence. Thus, defendants argued there was no evidence that she caused, contributed to, advised, or otherwise participated in any trespass on plaintiffs' property, and her status as a property owner alone did not establish liability. The court agreed and granted the motion, reasoning that because Hannelore did not direct any cutting of the trees— Robert did—defendants were entitled to a directed verdict. Plaintiffs argued in their motion for reconsideration that as part-owner of the dominant estate, Hannelore was responsible for any changes in the condition of the land that put a greater burden on the servient estate, which included the greenery removal that increased surface water. The court did not provide any reasoning for the basis of its denial of plaintiffs' motion for reconsideration as to Hannelore on the record.

To succeed on a trespass claim, the plaintiff must prove that the defendant made intentional and "unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Wolfenbarger v Wright*, 336 Mich App 1, 15; 969 NW2d 518 (2021) (quotation marks and citation omitted).

> Generally, all who wrongfully contribute to the commission of a trespass are equally liable with the person committing the act complained of. Persons who do not actively participate in the commission of the trespass must do something by way of encouragement, advice, or suggestion that leads to the commission of the trespass in order to render them liable as joint trespassers. There is no joint trespass where defendant's independent acts contributed to the result or where they cooperated to do a lawful act and in doing it some of them committed a trespass. [*Helsel*, 219 Mich App at 22-23.]

In *Helsel*, 219 Mich App at 16, the plaintiffs filed suit to recover for fire damage to their tree farm. The defendants, Morcom and Grokau, lived together on property owned by Morcom that was next to the plaintiffs' tree farm. *Id*. As Grokau was burning trash, it was left unattended, and the fire spread to the plaintiffs' tree farm. *Id*. at 17. Morcom was not home and did not know that Grokau planned to burn trash that day. *Id*. The plaintiffs filed suit, alleging negligence,

respondeat superior, trespass, and a statutory violation; Grokau settled, and the trial court granted Morcom summary disposition on all counts. *Id*. We affirmed the trial court's order granting summary disposition concerning the trespass claim against Morcom, reasoning that although Morcom was the owner of the property next to the tree farm, "the evidence indicated that any trespass resulted from Grokau's independent acts and that Morcom did nothing to encourage or contribute to a trespass." *Id*. at 23.

Similarly, the trial court did not err in granting the Estate of Hannelore a directed verdict as to plaintiffs' trespass claims or abuse its discretion in denying reconsideration of this decision. There was no evidence that Hannelore did anything to "encourage or contribute to" a trespass on plaintiffs' property. *Id*. Eesam testified that Hannelore was present in early June 2016 when he talked to Robert about the removed greenery. But Eesam specifically testified that Robert told Eesam that Robert had someone cut down the trees. Robert also testified in his deposition that he directed Timberwolf to do the clearing. There is no evidence that Hannelore had any involvement with the clearing that was performed. Thus, viewing this evidence in the light most favorable to plaintiffs, *Barnes*, 334 Mich App at 550, it is clear that Hannelore did nothing to encourage or contribute to any alleged trespass. Therefore, the Estate of Hannelore was entitled to judgment as a matter of law. Although Hannelore was a coowner of defendants' property, this alone does not establish liability of her estate. See *Helsel*, 219 Mich App at 16-17, 23. Accordingly, we affirm the trial court's order granting a directed verdict entered in favor of the Estate of Hannelore, as well as the trial court's order denying reconsideration.

## 2. GARAGE-RELATED CLAIM

Defendants also moved for a directed verdict related to plaintiffs' claims of trespass relating to defendants' garage. Defendants argued that the three-year statute of limitations in MCL 600.5808(2) precluded this claim because Eesam testified that gutters were removed from the garage in 2008 or 2010, and plaintiffs did not file suit until 2017. The court granted defendants' motion, reasoning that there was no evidence presented to establish that defendants had a duty to have gutters, such as an ordinance or building code. In addition, there was no testimony about damages and, even if the foundation was damaged, it could have happened any time after plaintiffs' cottage was built.

The trial court made a mistake of law when it granted a directed verdict because defendants did not have any "duty" to have gutters on the garage, such as under a local ordinance or building code. There is, however, no duty element for a claim of trespass. See *Wiggins*, 291 Mich App at 555 (defining a trespass as "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession") (quotation marks and citation omitted). Duty is an element of an ordinary negligence claim, *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020), but plaintiffs' negligence claim was not at issue during the second trial on remand. *Arabbo*, unpub op at 2-3.

The trial court also granted defendants' motion, in part, on the basis that plaintiffs failed to show evidence of damages. Damages are an element of an ordinary negligence claim, *Powell-Murphy*, 333 Mich App at 243; whereas, once a trespass is established, the complaining party is presumptively entitled to damages, *Wiggins*, 291 Mich App at 555. Despite the trial court's errors,

however, this Court "will not reverse a trial court's decision when it reaches the right result, even if it was for the wrong reason." *Bailey v Antrim Co*, 341 Mich App 411, 420; 990 NW2d 372 (2022). Although the trial court granted this directed verdict, in part, based on the lack of evidence regarding duty and damages, apparently conflating the elements of a negligence claim with a trespass claim, the court's decision to grant a directed verdict was proper because plaintiffs' trespass claim relating to water runoff from defendants' garage was barred by the statute of limitations.

MCL 600.5805(1) provides that "[a] person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section." Under MCL 600.5805(2), "the period of limitations is 3 years after the time of the . . . injury for all actions to recover damages for . . . injury to a person or property." "[T]he period of limitations runs from the time the claim accrues," and in situations not expressly covered by statute, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. Plaintiffs rely on the continuing-wrongs doctrine to assert that their trespass claim related to defendants' garage was not time-barred. We disagree.

> For many years, Michigan courts recognized an exception to application of the statute of limitations when there were continuing wrongful acts. See *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 280; 769 NW2d 234 (2009). Under the "continuing wrongs" doctrine, the limitations period, rather than beginning to run on the occurrence of the first wrongful act, did not begin to run until the continuing wrong was abated. *Id*. However, the Michigan Supreme Court in 2005 abrogated the continuing-wrongs doctrine. *Id*. at 288. [*Morse v Colitti*, 317 Mich App 526, 550; 896 NW2d 15 (2016).]

The limitations period runs from the time the claim accrues, and the claim accrues when the wrong was done regardless of when the damage results. *Id*., citing MCL 600.5827. "The term 'wrong' in MCL 600.5827 refers to the date on which the plaintiff was harmed by the defendant's negligent act, not the date on which the defendant acted negligently." *Morse*, 317 Mich App at 550-551 (quotation marks and citations omitted). "In other words, the 'wrong' is 'done' when both the act and the injury first occur." *Id*. at 551.

Eesam testified that defendants' garage had gutters at some point in time, but they were removed sometime between 2006 and 2008 or 2010. Eesam testified that he frequently observed water flowing from defendants' roof onto his property, but the damage became "more obvious" in 2016. Robert testified that he had "eaves troughs" in front of the garage for drainage, and that this water did not flow onto plaintiffs' property, but rather, went to the lake. Regardless, taking the evidence in the light most favorable to plaintiffs, the latest the gutters were removed was 2010, the period when the alleged water flow from defendants' roof onto plaintiffs' property began. This would be the first time plaintiffs experienced that water runoff and, therefore, when this claim accrued. See *id*.; MCL 600.5827. Under MCL 600.5805(2), plaintiffs had three years, or until 2013, to file suit and allege trespass regarding the garage. However, plaintiffs did not file suit until 2017. As such, plaintiffs' trespass claim relating to the water runoff from defendants' garage was

time-barred by the three-year statute of limitations in MCL 600.5805(2), and the court did not err when it granted defendants' motion for directed verdict or abuse its discretion by denying reconsideration of the same.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer